UNITED STATES of America,
Plaintiff-Appellee,

v.

Bernard G. RUBIN, Defendant-Appellant.

No. 76–1143.

United States Court of Appeals,
Fifth Circuit.

March 15, 1979.

Richard L. Rosenfield, Los Angeles, Cal.,
for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Miami, Fla., Ivan Michael Schaeffer, Atty., T. George Gilinsky, Jerome M. Feit, Atty., Dept. of Justice, Washington, D. C., Marty Steinberg, Special Atty., Dept. of Justice, Miami, Fla., for plaintiff-appellee.

## ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before GOLDBERG and HILL, Circuit Judges and KERR *, District Judge.

GOLDBERG, Circuit Judge:

■ Following a jury trial in United States district court, Bernard J. Rubin was convicted of 103 counts charging him with embezzlement of union and employee welfare benefit plan funds, racketeering, income tax evasion, and failure to keep labor union records. The sentences on all counts were to run concurrently. Rubin appealed his convictions to this court, and we affirmed. *United States v. Rubin*, 559 F.2d 975 (5th Cir. 1977). We held that 101 of his convictions were either free of error or unaffected by any errors committed by the trial judge. The sentences on his other two convictions were not longer than, and were to run concurrently with, his sentences on some of the 101 counts we examined; we therefore declined to review those convictions, something we thought we were entitled to do under the concurrent sentence doctrine. That doctrine is frequently stated as follows: the existence of one valid conviction may make unnecessary the review of other convictions when concurrent sentences have been given. *See Hirabayashi v. United States*, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943).

Rubin successfully petitioned the United States Supreme Court for a writ of certiorari, claiming that we had improperly in-voked the concurrent sentence doctrine. The Supreme Court vacated our judgment remanding the case to us for "further consideration in light of the position asserted by the Solicitor General in his supplemental brief." *Rubin v. United States*, —— U.S. ——, 99 S.Ct. 67, 58 L.Ed.2d 102 (1978) (mem). In that brief, the Solicitor General argues that we should not have applied the concurrent sentence doctrine because there is a substantial likelihood that the two unreviewed convictions will adversely affect Rubin's parole. Upon consideration of the information provided by the Solicitor General, we agree that in this case our application of the concurrent sentence doctrine was improper. We will explain why we should not have applied the doctrine in the following section.

### I.

■ The United States Supreme Court has called the concurrent sentence doctrine "a rule of judicial convenience." *Benton v. Maryland*, 395 U.S. 784, 791, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). We have stated that in deciding whether or not to apply this rule of judicial convenience, we should consider whether the defendant will suffer adverse collateral consequences from the unreviewed convictions. *See United States v. Binetti*, 547 F.2d 265, 269 (5th Cir. 1977); *Government of the Canal Zone v. Fears*, 528 F.2d 641, 644 (5th Cir. 1976); *United States v. Strickland*, 509 F.2d 273, 274 (5th Cir. 1975). Despite such statements, we have often applied the doctrine mechanically without really considering the adverse consequences. Because it may have been unclear in our past cases, we now expressly hold that a court may not apply the concurrent sentence doctrine at least in the situation where there is a significant likelihood that the defendant will suffer adverse collateral consequences from the unreviewed conviction.[1]

---

* Senior District Judge of the District of Wyoming, sitting by designation.

1. Our holding clearly does not invalidate the concurrent sentence doctrine. It only indicates that it may be applied less frequently. Although we conclude that Rubin has established a significant likelihood of adverse collateral consequences from his unreviewed convictions, we express no opinion about what other cir-

Rubin claims that he has established such a significant likelihood of adverse collateral consequences. Specifically, he says that the two unreviewed convictions increase the amount of time he must serve in prison before he can be paroled. Those two convictions were for embezzling a total of approximately $330,000. Among the convictions we reviewed and found valid were 84 other embezzlement counts involving a total of approximately $55,000.[2] Rubin claims that the amount he is said to have embezzled will affect the date on which he is paroled.

■ To determine if Rubin's assertions are correct, we look to the United States Parole Commission guidelines. The Parole Commission uses these guidelines to determine how long a prisoner serves before being released on parole. *See* 18 U.S.C. § 4206 (1976); 28 C.F.R. § 2.20 (1978). Although the Parole Commission may depart from its guidelines "[w]here the circumstances warrant," 28 C.F.R. § 2.20(c) & (d) (1978), it almost always follows them in any given case. *See, e. g., Ruip v. United States*, 555 F.2d 1331, 1333 (6th Cir. 1977); *United States v. Salerno*, 538 F.2d 1005, 1007 (3d Cir. 1976). Under the guidelines, the customary length of time an offender serves is determined in part by the offense severity rating the Parole Commission assigns to the offense or offenses for which a prisoner is incarcerated.[3] The severity rating for the offense of embezzlement is based on the amount of money embezzled. The possible classifications are "low moderate" (less than $1,000 embezzled), "moder-

ate" ($1,000 to $19,999), "high" ($20,000 to $100,000), and "very high" ($100,000 to $500,000). 28 C.F.R. § 2.20 (1978).

In assigning this severity rating, the Parole Commission looks to the "actual offense behavior" that can reliably be established. United States Parole Commission Research Unit, *Guideline Application Manual* (Nov.1977). Since the offenses for which the prisoner is incarcerated are deemed reliably established, the Parole Commission automatically considers those convictions. *Id.* Thus, in Rubin's case, the Parole Commission will consider all 86 embezzlement convictions. Because more than $200,000 is involved, it will assign these parole offenses a "very high" severity rating. If, however, the Parole Commission did not consider the two unreviewed counts, only $55,000 would be involved. The Parole Commission would then assign the parole offenses only a "high" severity rating and would be likely to parole Rubin sooner.

■ It does not necessarily follow, however, that we should have reviewed the other two convictions. When a defendant is convicted on several counts, one of which is reversed on appeal, the Parole Commission will not automatically drop the reversed count from its consideration in determining the offense severity rating. Because the Parole Commission looks to the "actual offense behavior" which can be reliably established, it will still consider a reversed conviction in determining the offense severity rating, if the reversal was on grounds not relating to guilt or innocence.[4]

cumstances will fall within this limitation on the concurrent sentence doctrine.

2. The 84 embezzlement convictions we reviewed charged Rubin with taking multiple reimbursements for expenses. The 2 convictions we did not review charged Rubin with embezzlement by taking unauthorized salary increases. The remaining 17 convictions we found valid were for racketeering, income tax evasion, and failure to keep union records.

3. 28 C.F.R. § 2.20(b). The recommended range of time to be served before parole is also based on the prisoner's personal characteristics. *Id.* The Parole Commission assigns each prisoner a "salient factor score" based on the following

characteristics: number of prior convictions, number of prior incarcerations, age at first commitment, parole and probation history, employment history, history of heroin or opiate dependence, and whether the commitment offense involved auto theft or checks. United States Parole Commission Research Unit, *Guideline Application Manual* (Nov.1977).

4. Accordingly, we may apply the concurrent sentence doctrine to avoid reviewing counts not challenged on grounds relating to guilt or innocence without worrying that we will prolong the period of time the prisoner must serve before being released on parole. This is so because if we reverse a conviction on grounds

However, if the court of appeals reverses one of the prisoner's convictions on grounds relating to guilt or innocence, then the reversal does indicate that the conviction is not reliably established, and the Parole Commission would not consider it in determining the offense severity rating.

■ The two claims of error Rubin raised in the court of appeals were related to his guilt or innocence of the two unreviewed embezzlement convictions. Therefore, if we had reviewed and reversed those convictions, we must assume that the Parole Commission would not consider them in determining the severity rating for Rubin's parole offenses. If the Parole Commission omitted those convictions in determining the offense severity rating, it would drop the rating from a "very high" to a "high" severity. And since under the Parole Commission guidelines the recommended term of incarceration increases as the offense severity rating increases,[5] there is a significant likelihood that the two unreviewed convictions will lengthen Rubin's incarceration.

We, therefore, hold that we should not have applied the concurrent sentence doctrine in this case. In so holding, we bow not only to the hierarchical position of the Supreme Court, but to its superior wisdom as well. We will now consider the points of error Rubin raised with respect to the two unreviewed convictions.

## II.

■ The two counts we did not review charged Rubin with embezzlement in his position as a labor organizer by taking unauthorized salary increases, with knowledge that the increases were unauthorized, in violation of 29 U.S.C. § 501(c).[6] Rubin argues that the indictment and the jury instructions may have erroneously caused the jury to conclude that the mere taking of unauthorized salary increases, without knowledge that they were unauthorized, constitutes a § 501(c) embezzlement offense. He claims that the indictment equated the two, and he argues that the jury's mistaken belief may have been reinforced by the judge's instructions to the jury on Rubin's fiduciary duties under 29 U.S.C. § 501(a).[7]

We completely agree with Rubin that the mere taking of unauthorized salary increases does not constitute a § 501(c) violation. Criminal intent is an element of a § 501(c) offense. *See, e. g., United States v. Goad,* 490 F.2d 1158 (8th Cir. 1974). One must *willfully* take the salary increases, *with knowledge that the increases are not authorized according to the Union's constitution and bylaws,* to violate § 501(c). *United States v. Goad,* 490 F.2d at 1165. *See also, United States v. Nell,* 526 F.2d 1223, 1233 (5th Cir. 1976) (approving *Goad* ).

We do not agree, however, that the indictment or jury instructions indicated otherwise. The indictment specified that Rubin had to act "unlawfully, knowingly, and willfully" to violate § 501(c). And even assuming the indictment was somewhat unclear on the criminal intent requirement, the jury instructions would have dispelled any confusion. The judge's charge careful-

---

unrelated to guilt or innocence, the Parole Commission will give the conviction the same weight it gives to a conviction we affirm. We wish to note that although we rely on the Parole Commission's practices to determine whether or not we should apply the concurrent sentence doctrine, we are not, by our reliance, endorsing those practices.

5. For example if Rubin were to receive a "very good" personal characteristics rating, the recommended period of incarceration would be 26–36 months if the offense severity rating were "very high" and only 16–20 months if the offense severity rating were "high".

6. The section provides, "Any person who embezzles . . . any of the moneys . . . of a labor organization of which he is an officer . . . shall be fined not more than $10,000 or imprisoned for not more than five years, or both." 29 U.S.C. § 501(c) (1976).

7. This section provides that the officers of a labor organization have the duty "to hold its money . . . solely for the benefit of the organization . . . and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder." 29 U.S.C. § 501(a) (1976).

ly explained the elements of the offense, emphasizing several times the intent requirement and outlining what conduct would constitute the necessary intent. *See* transcript vol. IX pp. 2065–73.

Rubin also complains of the judge's instruction that Rubin had a fiduciary duty under § 501(a) not to spend the Union's money in unauthorized ways. We conclude that this instruction would not have confused the jury, since the judge further instructed that Rubin would not have violated § 501(c) unless he breached this fiduciary duty *with the requisite criminal intent.* We therefore conclude that Rubin's contentions as to the indictment and jury instructions are without merit.

■ Rubin also argues that the trial court improperly excluded as hearsay certain proffered testimony. To decide whether the testimony was inadmissible hearsay, some background information is necessary. One of Rubin's defenses in this case was lack of criminal intent. He claimed that because he interpreted the unions' constitutions as allowing the salary increases, he was unaware that the increases were actually unauthorized. The constitutions, however, appear clearly to mandate a different procedure for obtaining salary increases from the procedure followed by Rubin. To explain why he nonetheless believed the salary increases were authorized, Rubin testified that his understanding was that the constitutions were not to be interpreted literally. Rubin wanted to explain further that both present and past presidents of the unions, those individuals given the duty of interpreting the constitutions, had told him that the constitutions were flexible, living documents that could be interpreted to fit the needs of a particular local. The trial judge excluded this testimony as hearsay.

The Federal Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence *to prove the truth of the matter asserted.*" Fed.R.Evid. 801 (emphasis added). As Rubin explained at trial, he did not offer the statements to prove the truth of the matter asserted, but instead to prove that he had heard them and to establish their effect on his state of mind. *See Dutton v. Evans,* 400 U.S. 74, 88, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). Thus, Rubin's proffered testimony was not hearsay, and because it was relevant to his state of mind, it should have been admitted. *See* Fed.R.Evid. 401 & 402.

Since the trial court allowed Rubin to testify to his understanding of what the constitutions meant, the government argues that the excluded testimony would have been cumulative only. Thus, the government claims that the trial court's exclusion of the testimony constitutes harmless error. We disagree. Rubin's testimony about what he considered to be the proper interpretation of the unions' constitutions would have been much more believable had he also testified to the conversations on which he based his conclusions—especially since those conversations were with the officials charged with interpreting the constitutions. Since the testimony was admissible and would have significantly helped establish Rubin's defense, we hold that its exclusion was reversible error.

For the reasons stated in this opinion, we reverse the two unauthorized salary increase convictions, counts 87 and 88, and remand them to the district court. We affirm the remaining 101 convictions for the reasons set forth in our prior opinion. *United States v. Rubin,* 559 F.2d 975 (5th Cir. 1977).

AFFIRMED in PART, REVERSED and REMANDED in PART.