Jerry Dwayne BAXTER,
Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas
Dept. of Corrections,
Respondent-Appellee.

No. 78–2107.

United States Court of Appeals,
Fifth Circuit.

April 3, 1980.

Karen K. Brown, Asst. Public Defender, Houston, Tex., for petitioner-appellant.

Douglas M. Becker, J. E. Seymour, P. E. George, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before JONES, CHARLES CLARK and GEE, Circuit Judges.

CHARLES CLARK, Circuit Judge:

Jerry Dwayne Baxter filed this petition for a writ of habeas corpus, seeking his release from the Texas Department of Corrections, where he is serving concurrent sentences for burglary and theft. He challenges the constitutionality of his custody on several grounds. He asserts that the prison's disciplinary procedures, which resulted in the loss of good-time credit, violated his constitutional rights. He further contends that both his convictions are invalid because he was denied effective assistance of counsel. Finally, he argues that his burglary conviction is wrongful because the Texas burglary statute incorporates an unconstitutional presumption. After a hearing, the district court denied relief on all grounds. Baxter appeals. Although our reasoning differs in part from that employed by the district court, we affirm its judgment.

I.  Prison Disciplinary Proceeding

Baxter pled guilty at a prison disciplinary hearing to the offense of possession of marijuana. The unit disciplinary committee punished him by placing him in solitary confinement for eleven days, demoting him in status, and depriving him of earned good-time credit. Baxter did not appeal through the administrative procedures provided by the Texas Department of Corrections' rules and regulations but filed a state habeas corpus petition with respect to the hearing. The state courts denied his petition.

Baxter then sought federal habeas relief. His petition alleges that the disciplinary proceeding violated several constitutional guarantees. In particular, he asserts that threats by prison officials coerced his guilty plea; that he was not provided written notice of the offense for which he was disciplined, as required by *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); that he could not be found guilty of possession because no marijuana was ever found; that he was unable to exercise his right to appeal because he was held in solitary confinement after the hearing, lacking both knowledge of his right to appeal and writing materials with which to draft his appeal; and that the sentence imposed in the disciplinary proceedings constituted cruel and unusual punishment. The district court concluded that none of Baxter's contentions had merit.

We do not consider the merits of Baxter's claims, however, for he failed to exhaust his administrative remedies. The district court found that the Texas Department of Corrections' rules provide a prisoner the right to appeal a penalty assessed at a disciplinary hearing to the Director at any time, without limitation. As we held in *Lerma v. Estelle*, 585 F.2d 1297 (5th Cir. 1978), a federal court may not grant habeas corpus relief to a petitioner who has failed to exhaust all administrative remedies, in-

cluding an appeal to the Director of Corrections. Baxter is entitled to no relief on his claims, regardless of their merit, until he has pursued such an appeal. Thus, although the district court's consideration of the merits of these claims was improper, its denial of habeas corpus relief was correct.

## II. Adequacy of Counsel

Baxter is now serving a fifteen-year sentence for first-degree burglary (the 1975 Harris County conviction) concurrently with a ten-year sentence for felony theft (the 1975 Brazoria County conviction). Baxter pled guilty to both offenses but here asserts that the pleas were the result of ineffective assistance of counsel.

### A. *The 1975 Harris County Conviction*

Baxter's consistent history of entering guilty pleas to charges brought against him spans more than two decades. The first such plea relevant to this case was entered in 1962, when he pled guilty to burglary and felony theft charges. In 1970, he pled guilty to another burglary charge in which the 1962 burglary conviction was alleged for enhancement purposes. In 1975, on his lawyer's advice, Baxter pled guilty in Harris County to burglary. Had he not pled guilty, his prior convictions could have resulted in his prosecution as an habitual offender, subject to a mandatory life sentence.

■ Baxter now asserts that he was denied effective assistance of counsel in the 1975 Harris County proceeding because his lawyer did not investigate the possible invalidity of the two prior convictions upon which enhancement could have been based. Baxter attacks the 1970 prior conviction by asserting that he was denied effective assistance of counsel in that case as well, but the only ineffectiveness asserted was that his 1970 lawyer failed to investigate the validity of the 1962 conviction. If the 1962 conviction could in fact be validly used for enhancement purposes, then the failure of the lawyers in both 1970 and 1975 to investigate the validity of that conviction could in no circumstances constitute ineffective

assistance of counsel. *Sand v. Estelle*, 551 F.2d 49 (5th Cir. 1977). Thus, the alleged failure of counsel in the 1975 Harris County conviction depends entirely upon whether Baxter's 1962 conviction was valid.

■ To attack his 1962 conviction, Baxter once again raises the claim of ineffective assistance of counsel. The gravamen of the attack, as presented in the habeas petition, is that his lawyer was appointed five minutes before trial and, unable to conduct any independent investigation of the law or facts of Baxter's case, could neither reasonably determine whether Baxter had a good defense nor intelligently recommend to him how to plead. Thus, Baxter asserts, his guilty plea was not intelligently entered and he was thereby denied effective assistance of counsel.

At the hearing before the district court, Baxter amplified this claim for the first time by testifying about the details of his putative defense. In his testimony he asserted that he was "pilled up" at the time of the 1962 offense and did not even know that the automobile in which he was sitting was stolen. He then claimed that when he was surprised by the police in his drugged condition, he hit an officer in the mouth and fled to a friend's, while the police shot at him. He testified that when the police caught him they beat a confession out of him. Based on this scenario, Baxter asserts that counsel did not render effective assistance by permitting him to plead guilty.

Baxter testified at first that he had told all the underlying facts to his court-appointed counsel, but on cross-examination and on examination by the court, he testified that he was unable to recall what, if anything, he had told his attorney. The district court denied the writ, finding that Baxter was foreclosed from proving these allegations concerning his 1962 attorney because of his unreasonable delay and the resulting prejudice to the state.

We agree. A petition for habeas corpus may be dismissed if the petitioner's unreasonable delay in filing the petition has prejudiced the state in its ability to respond. This rule has traditionally been applied to

habeas corpus petitions under the equitable doctrine of laches,[1] and it continues to apply under the provisions of Rule 9(a) of the Rules Governing § 2254 Cases.[2] Although the § 2254 Rules probably do not apply to this case,[3] we need not determine to what extent, if at all, Rule 9(a) did more than embody preexisting law, for we find that the facts of this case demonstrate prejudice so great caused by such unreasonable delay that the claim is barred under either formulation of the rule.

■ Laches is an equitable doctrine. Its application must be considered on the facts

1. "[H]abeas corpus has traditionally been regarded as governed by equitable principles. . . . Among them is the principle that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks." *Fay v. Noia*, 372 U.S. 391, 438, 83 S.Ct. 822, 848, 849, 9 L.Ed.2d 837 (1963).

The Court specifically recognized the problem of the stale claim in *McMann v. Richardson*, 397 U.S. 759, 773, 90 S.Ct. 1441, 1450, 25 L.Ed.2d 763 (1970):

What is at stake in this phase of the case is not the integrity of the state convictions obtained on guilty pleas, but whether, years later, defendants must be permitted to withdraw their pleas, which were perfectly valid when made, and be given another choice between admitting their guilt and putting the State to its proof.

The Court declined to give them such an opportunity, even though the guilty pleas may have been motivated by coerced confessions, which counsel may erroneously have thought to have been admissible.

This court has frequently recognized implicitly that undue delay and prejudice may require dismissal of a petition, even though we have not had occasion to apply that sanction. *See, e. g., Lewellyn v. Wainwright*, 593 F.2d 15 (5th Cir. 1979); *Hudson v. Alabama*, 493 F.2d 171, 173 (5th Cir. 1974); *Goodwin v. Smith*, 439 F.2d 1180, 1183 (5th Cir. 1971).

2. Rule 9(a) of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C., provides as follows:

Delayed Petitions. A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

The Advisory Committee Note to Rule 9 indicates that the rule was not intended to provide a new defense but merely to incorporate traditional notions of laches:

Subdivision (a) is not a statute of limitations. Rather, the limitation is based on the equitable doctrine of laches. "Laches is such delay in enforcing one's rights as works disadvantage to another."

. . . . .

The standard used for determining if the petitioner shall be barred from asserting his claim is consistent with that used in laches provisions generally. The petitioner is held to a standard of reasonable diligence.

(Citations omitted.)

3. The effective date of Rule 9(a) is February 1, 1977. The rule applies only to petitions filed after that date. *Jackson v. Estelle*, 570 F.2d 546 (5th Cir. 1978). Baxter filed his original and first supplemental habeas petitions before the effective date; his second supplemental and amended petitions, after that date. The specific allegations of his drugged condition, of his ignorance that the vehicle had been stolen, of his beating by the police, and of his coerced confession were first made by Baxter at the hearing before the district court several months after Rule 9(a) became effective. The state's inability to counter these allegations at the hearing was exacerbated by the fact that counsel for Baxter informed the state only the day before the hearing of Baxter's desire to press the sixth amendment claim. In particular, the allegation of a coerced confession was apparently quite unexpected. The original petition had not even hinted at such facts, and the state had therefore not prepared evidence to rebut a coerced confession claim.

To the extent that the coerced confession raised a new claim cognizable on federal habeas corpus—presumably a fifth amendment claim—that claim might be subject to Rule 9(a) because it was first raised after the effective date. To the same extent, however, Baxter might be barred from raising that claim (or all claims on that petition) for failure to exhaust state remedies. *See generally Galtieri v. Wainwright*, 582 F.2d 348 (5th Cir. 1978) (en banc). Indeed, Baxter's counsel suggested at one point that if the state was in fact unprepared it could allege failure to exhaust. The state responded that it did not intend to allege exhaustion.

We need not decide whether the state has the power to waive the exhaustion requirement, grounded as it is in institutional considerations. In response to the court's questioning, Baxter's counsel asserted that the coerced confession was intended to be only underlying factual support for the contention that defense counsel in 1962 and in the subsequent convictions provided ineffective assistance by failing to investigate the circumstances of the 1962 conviction. The sixth amendment issue, fairly presented to the state courts, has been exhausted.

of each case, based upon the reasonableness of the party's behavior under the circumstances. Baxter's delay was unreasonable in the extreme. The offense itself, the alleged beating and coerced confession, and the asserted ineffective assistance of counsel all took place in 1962. Baxter first raised these specific factual allegations in 1977—fifteen years later.

Baxter of course knew the facts upon which his claim is based during the entire period; it is not as if he only recently became aware of the grounds for a sixth amendment claim. Indeed, given Baxter's intelligence, education,[4] and familiarity with the criminal justice system,[5] it is difficult to understand why he did not initially raise these factual allegations to the trial court in 1962 or by a collateral attack soon after. As the district court observed at the hearing:

> If those facts actually existed, there is no doubt about the fact that the man would have told the judge in open court. . . . He's not going to be standing there. He's not an idiot. He's not a moron. He's not that ill educated. He wasn't that much of a stranger to court proceedings. He had been convicted before.
>
> And it is just illogical for this court to believe that any rational human being—and he admitted to me he was not pilled up; it was long after the alleged beating; he knew what he was doing—it is illogical for this court to believe that if, in fact, there was any substance to that story, the petitioner would [not] have, at that time, or shortly thereafter, have

raised that issue. It is illogical to assume otherwise.

We are not dealing with a moron. We are not dealing with an uneducated person. We are dealing with someone who is reasonably intelligent.

Thus, Baxter has been sleeping on his rights since 1962, when he first could reasonably be expected to have raised this claim. Baxter offers no excuse for his fifteen-year delay. On the contrary, he had every incentive during that period to raise the claim, his assertion to the contrary notwithstanding. He served concurrent sentences for his 1962 convictions. He pled guilty to, and served a sentence for, the 1970 conviction on charges in which the purportedly defective 1962 conviction was alleged for enhancement. His 1975 guilty pleas were motivated in part by this prior conviction. Moreover, during this entire period he suffered from "the obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences."[6] In particular, the threat of the use of the conviction for enhancement purposes in habitual offender statutes was profoundly real for a recidivist like Baxter.

Thus, if we assume he believes them to be true, Baxter unreasonably delayed fifteen years in raising these allegations, even though he all the while had compelling reasons to assert them. Nevertheless, were this the extent of proof on laches, we would not hold that Baxter was barred by his delay, however unreasonable. As we have stated, "[d]elay alone is no bar to federal habeas relief to correct jurisdictional and constitutional trial errors." *Hamilton v.*

---

4. Baxter had at least two years of college education and had attended college while in the Texas Department of Corrections.

5. Baxter pled guilty in 1959 to an attempted robbery charge and in 1960 to burglary and grand larceny in addition to the crimes discussed above.

6. *Sibron v. New York*, 392 U.S. 40, 55, 88 S.Ct. 1889, 1899, 20 L.Ed.2d 917 (1968). These include, for example, the use of the conviction for impeachment purposes, *id.*; for enhancement purposes under habitual offender statutes, ·*Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23

L.Ed.2d 707 (1969); by a parole board in determining a prisoner's severity rating and hence his term of incarceration, *United States v. Rubin*, 591 F.2d 278 (5th Cir.) (on remand), *cert. denied*, —— U.S. ——, 100 S.Ct. 133, 62 L.Ed.2d 87 (1979); in disciplinary proceedings by an employer, *Street v. New York*, 394 U.S. 576, 579 n. 3, 89 S.Ct. 1354, 1359 n. 3, 22 L.Ed.2d 572 (1969); under state statutes to render him ineligible to vote, serve as a juror, or be elected to labor union office, *Carafas v. LaVallee*, 391 U.S. 234, 237, 88 S.Ct. 1556, 1559, 20 L.Ed.2d 554 (1968).

*Watkins*, 436 F.2d 1323, 1326 (5th Cir. 1970). In that case we allowed a habeas petitioner to challenge his conviction thirty-six years after trial. *See also Jackson v. Estelle*, 570 F.2d 546 (5th Cir. 1978) (thirty-three years); *Hudson v. Alabama*, 493 F.2d 171, 173 (5th Cir. 1974) (twenty-six years).

Laches requires not only unreasonable delay but also that the delay work to the detriment of the other party. Here, unlike the cases cited above, Baxter's failure to raise these allegations for fifteen years has rendered it virtually impossible for the state to rebut them. Baxter's lawyer in the 1962 case no longer has an independent recollection of the facts relating to his representation. The judge who tried the case is now dead. There is no transcript of the 1962 guilty plea proceeding. The indictment in the burglary charge is lost. Moreover, the district court noted that the identity and whereabouts of the police officers who allegedly beat Baxter are totally unknown. The state's ability to rebut his allegations is seriously damaged if not destroyed.

Even if the state's ability to rebut those allegations had not been prejudiced, however, the state's ability to respond to the next element of Baxter's claim—that given these underlying facts, the assistance rendered by counsel was ineffective—would still be prejudiced. Such a claim would require proof of more than the truthfulness of the underlying facts, for a sixth amendment claim contains a subjective component as well. The state has been denied the lawyer's reasonably current recollections about circumstances known to him, actions taken unknown to Baxter, trial strategy, and other subjective matters.

The need for testimony from those now deceased, without recollection, or unable to be located contrasts markedly with the kind of evidence available to the state in those cases where we have allowed petitioners to assert equally venerable claims. For example, in *Hamilton v. Watkins*, 436 F.2d 1323 (5th Cir. 1970), the question whether blacks had been systematically excluded from juries could be proved or rebutted by reference to objective facts. In *Goodwin v. Smith*, 439 F.2d 1180, 1183 (5th Cir. 1971), we noted that if no witnesses were able to testify to the events in a twelve-year-old trial, the state would still be able to prove its case by means of testimony concerning the uniform practice in the county court at that time.

Moreover, this case is unlike those in which no prejudice had been shown to be due to the delay. In *Hudson v. Alabama*, 493 F.2d 171, 173 (5th Cir. 1974), we held that laches will not bar an examination of the constitutional consequences of virtually admitted facts. In *Jackson v. Estelle*, 570 F.2d 546, 547 (5th Cir. 1978), there had been no actual showing of the difficulty of proof. In *Lewellyn v. Wainwright*, 593 F.2d 15, 17 (5th Cir. 1979), evidence had been lost because of the petitioner's delay, but it was evidence the loss of which could not have prejudiced the state.

Therefore, Baxter is barred by laches from attempting to prove the facts leading up to his coerced confession in 1962 or to prove that counsel's assistance based on such facts was ineffective. Consequently, he has no basis on which to challenge either the 1970 conviction or the 1975 Harris County conviction. The denial of habeas corpus relief was proper.

### B. *The 1975 Brazoria County Conviction*

In an allegation unrelated to the above claims, Baxter asserts that he was denied effective assistance of counsel in Brazoria County in 1975 when he pled guilty to theft by exercising control. The district court found that counsel committed no error of constitutional magnitude in representing Baxter. Baxter contends that the district court's finding is clearly erroneous. Our review of the record demonstrates that the district court's determination must be affirmed.

### III. Unconstitutionality of the Presumption

Finally, Baxter asserts that the Texas burglary statute under which he was convicted, Tex.Penal Code Ann. tit. 7, § 30.02 (Vernon), unconstitutionally incor-

porates the presumption that one who enters a building without the owner's consent acts with the intent to commit theft, citing *Finch v. State*, 506 S.W.2d 749 (Tex.Civ. App.1974).[7] Such a presumption, he asserts, unconstitutionally shifts to the defendant the burden of disproving an essential element of the offense, for a presumption is valid only if there is a substantial assurance that the presumed fact is more likely than not to flow from the proved fact. *See Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).

We need not determine, however, whether this presumption passes the *Leary* test. By entering a guilty plea, Baxter has admitted all the elements of the offense, including the very fact to be presumed. Because of his admission, the state never made use of this presumption. Baxter therefore has no standing to challenge its constitutionality.[8]

AFFIRMED.

WARREN L. JONES, Circuit Judge, dissenting:

Among his claims the appellant attacks the prison disciplinary proceeding on the ground that he was unable to exercise his right to appeal because he was held in solitary confinement after the hearing, lacking both knowledge of his right to appeal and writing materials with which to draft his appeal. The majority rejects this claim because state administrative remedies were not exhausted by an appeal to the Director of the Texas Department of Corrections. Reliance is placed upon *Lerma v. Estelle*, 5th Cir. 1978, 585 F.2d 1297, for the proposition that "A federal court may not grant habeas corpus relief to a petitioner who has failed to exhaust all administrative remedies, including an appeal to the Director of Corrections." But *Lerma v. Es-*

*telle* was not a case where the habeas corpus petitioner alleged that he was denied his right to an administrative appeal. Lerma failed to file an administrative appeal. Although Lerma challenged the constitutionality of prison disciplinary proceedings, denial of the right to an administrative appeal was not one of his claims. I would reach the merits of Baxter's claims with respect to the prison disciplinary proceeding.

The majority invokes the doctrine of laches. It cites *Lewellyn v. Wainwright*, 5th Cir. 1979, 593 F.2d 15; *Hudson v. Alabama*, 5th Cir. 1974, 493 F.2d 171; *Goodwin v. Smith*, 5th Cir. 1971, 439 F.2d 1180; *Hamilton v. Watkins*, 5th Cir. 1970, 436 F.2d 1323; and *Jackson v. Estelle*, 5th Cir. 1978, 570 F.2d 546. In each of these cases an attack was made on an old conviction and the doctrine of enhancement was not involved.

In my view this case should be decided under the principles stated in *Sand v. Estelle*, 5th Cir. 1977, 551 F.2d 49, which is cited in passing by the majority, and *Davis v. Estelle*, 5th Cir. 1974, 502 F.2d 523, appeal after remand, 1976, 529 F.2d 437; *Mitchell v. United States*, 5th Cir. 1973, 482 F.2d 289; *Craig v. Beto*, 5th Cir. 1972, 458 F.2d 1131; *Jackson v. Louisiana*, 5th Cir. 1971, 452 F.2d 451, none of which are discussed or cited by the majority. Factually the present case is like these cases. They involve direct attacks on recent convictions and concomitant indirect attacks on earlier convictions. Each case involves a direct attack on a recent conviction and, because prior convictions were used to enhance the petitioner's sentence, an indirect attack on one or more prior convictions. In each of these cases there was no significant delay between the recent conviction and the petitioner's collateral challenge. None of these cases suggests that the difficulty of proof

---

7. The State asserts that this presumption has never been applied to the statute under which Baxter was convicted but only to its predecessor. Because of our disposition of this issue, we do not consider that contention.

8. The district court declined to rule on the merits of this claim, holding that in light of

*Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), Baxter's guilty plea waived any challenge to the presumption. Because lack of standing is logically antecedent to a consideration of waiver, we do not consider the application of *Tollett* to this case.

should bar investigation into the validity of the old, prior convictions which were used for enhancement. On the contrary, in *Craig v. Beto*, supra, the Court recognized that difficulty of proof existed but the Court did not allow that fact to prevent remand. In this case the Court said,

> "We cognize the practical problems in producing in Texas records and witnesses of events that occurred in Oklahoma over twenty years ago. However, we think that Texas should bear this burden, if necessary, in support of the validity of Craig's 1951 conviction because it has imposed the life sentence in Texas, and is presently confining Craig under that sentence, all based upon the theory that the Oklahoma conviction is valid." 458 F.2d 1131, 1134.

The Court held that the State of Texas had the burden of demonstrating the validity of the old conviction which it had used for enhancement.

In *Davis v. Estelle*, supra, the Court did not refer to the difficulty of proof when it said: "All of the actors in that Waco hearing are now dead except that the prosecutor is still living in Canyon, Texas. He may be able even at this late date to throw some light on this matter." 502 F.2d at 525.

I would vacate and remand that portion of the district court's judgment which denied Baxter's claim of ineffective assistance of counsel in the 1975 Harris County case. I would authorize the district court to take further evidence and conduct additional proceedings as may be necessary to resolve this issue.