**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Lorenzo FUENTES–JIMENEZ,**
**Defendant-Appellant.**

**No. 83–8610.**

United States Court of Appeals,
Eleventh Circuit.

Jan. 21, 1985.

John Oliver Ellis, Atlanta, Ga., for defendant-appellant.

James W. Kesler, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before TJOFLAT and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

The appellant was convicted of two offenses and sentenced to concurrent prison terms. He appeals one of these convictions. We affirm under the concurrent sentence doctrine.

Appellant Lorenzo Fuentes-Jimenez, a Cuban refugee, was being detained at the United States Penitentiary in Atlanta, Georgia pursuant to 8 U.S.C. § 1252(c) (1982)[1] awaiting deportation to Cuba.[2] On

---

1. 8 U.S.C. § 1252(c) provides in pertinent part: When a final order of deportation ... is made against any alien, the Attorney General shall have a period of six months from the date of such order ... within which to effect the alien's departure from the United States, during which period, at the Attorney General's discretion, the alien may be detained .... The Attorney General is authorized and directed to arrange for appropriate places of detention for those aliens whom he shall take into custody and detain under this section.

2. The appellant arrived in the United States on May 29, 1980, without a valid immigrant visa or other entry document. Upon his arrival he was immediately placed in the custody and control of the U.S. Attorney General pending determination of his deportability.

July 14, 1982, Raul Oritz, the lieutenant in charge of the cellblock in which the appellant was housed, "E" house, was escorting a group of officials on a tour of "E" house. The appellant banged on his celldoor and screamed something in Spanish at the passing group. After the group left, Oritz sent the staff counselor in charge of "E" house, Robert E. Nance, to bring appellant down to his office to discuss appellant's behavior. As instructed, Nance went to appellant's cell. Following normal procedures he requested appellant to place his hands through the food slot of his cell so that he could be handcuffed before being taken out of the cell. When appellant refused, Nance called another officer for assistance. After the other officer arrived, Nance opened the celldoor but quickly shut it when appellant threatened in broken English, "I will kill you." Nance also noticed that the appellant had what appeared to be a knife in his right hand. Nance then radioed for more assistance and asked that the officers bring him a body shield.

Two more officers, Webster and Henry, arrived shortly thereafter bringing a body shield with them. Nance again opened the celldoor, this time to allow appellant's cellmate out. At that time, appellant was standing up by the beds, approximately six feet from the door.

After removing appellant's cellmate from the cell, Nance returned for appellant. With the body shield in front of him Nance opened the celldoor and attempted to enter. He was forced back out of the cell, however, when appellant thrust the object in his hand at Nance. Nance attempted to enter the cell again, but by this time appellant had pushed the bunk bed in front of the celldoor, partially blocking Nance's entry. As Nance attempted to get through the remaining opening, he was cut by appellant several times and forced back out of the cell. Finally, Nance dropped the body shield, entered the cell and, using the bed, pinned appellant against the back wall. Officers Henry and Webster then entered the cell and attempted to subdue appellant. Appellant swung out at Officer Henry and cut him on the hand. Henry and Webster both observed that appellant was holding a razor blade. Appellant then crawled under the bed and was eventually dragged out by the officers and handcuffed. Shortly after the incident Officer Robinson was sent to the cell and found a double-edged razor blade on the floor.

On May 23, 1983, the appellant was indicted on four counts. Counts one, two, and three charged appellant with violating 18 U.S.C. § 111 (1982) by assaulting Officers Nance, Henry, and Webster, respectively, while they were engaged in the performance of their official duties.[3] Count four alleged that appellant had violated 18 U.S.C. § 1792 (1982) by conveying from one place to another within the federal penitentiary where he was incarcerated a weapon designed to kill, injure and disable, to wit, a razor blade.[4] Appellant went to trial on July 20, 1983, and the jury found him guilty as charged on counts one and four of the indictment, guilty of the lesser included offense of simple assault on count two, and not guilty on count three.

---

**3.** 18 U.S.C. § 111 provides:

Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with [any officer or employee of any United States penal or correctional institution] while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

**4.** 18 U.S.C. § 1792 (1982) provides in pertinent part:

Whoever ... at any Federal penal or correctional institution ... conveys into such institution, or from place to place therein any tool, device, or substance designed to cut, abrade, or destroy the materials, or any part thereof, of which any building of such institution is constructed ... or

Whoever conveys into such institution, or from place to place therein, any firearm, weapon, explosive, or any lethal or poisonous gas, or any other substance or thing designed to kill, injure, or disable any officer, agent, employee, or inmate thereof, or conspires so to do—

Shall be imprisoned not more than ten years.

The court sentenced appellant to three years in prison on counts one and four and three months in prison on count two.[5] The sentences in counts two and four were to run concurrently with that imposed for count one. Appellant now appeals his count four conviction under 18 U.S.C. § 1792 for conveying a weapon.

The concurrent sentence doctrine provides that, if a defendant is given concurrent sentences on several counts and the conviction on one count is found to be valid, an appellate court need not consider the validity of the convictions on the other counts. *Roviaro v. United States,* 353 U.S. 53, 59 n. 6, 77 S.Ct. 623, 627 n. 6, 1 L.Ed.2d 639 (1957); *United States v. Evans,* 572 F.2d 455, 476 (5th Cir.), *cert. denied,* 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978).[6] The doctrine, however, is not a jurisdictional bar to review, but a tool of judicial convenience, exercised at the court's discretion. *Benton v. Maryland,* 395 U.S. 784, 789–91, 89 S.Ct. 2056, 2060–61, 23 L.Ed.2d 707 (1969); *United States v. Wyatt,* 611 F.2d 568, 569 n. 5 (5th Cir.1980); *United States v. Evans,* 572 F.2d at 476. The doctrine should not be applied when "there is a significant likelihood that the defendants will suffer adverse collateral consequences from the unreviewed conviction." *United States v. Rubin,* 591 F.2d 278, 280 (5th Cir.), *cert. denied,* 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 87 (1979).

In the instant case, we find that the record establishes no basis for believing that the appellant will suffer adverse collateral consequences if appellant's section 1792 conviction is affirmed under the collateral sentence doctrine. The affirmance of this conviction will not affect appellant's eligibility for parole. *See United States v. MacPherson,* 664 F.2d 69, 74 n. 3 (5th Cir. Unit B 1981);[7] *United States v. Rubin,* 591 F.2d at 281–82. An examination of the guidelines the Parole Commission must apply, *see* 18 U.S.C. § 4206 (1982), in setting appellant's release date makes this clear. Under the guidelines, 28 C.F.R. § 2.20 (1983), the Commission must determine the length of time appellant will serve by looking to his "offense severity" rating accorded the crimes for which he was convicted, and his "salient factor" score. Appellant's salient factor score, which is a compilation of his personal characteristics, would not be altered if his conviction were reversed here. Therefore, we need only concern ourselves with the question of whether our affirmance of appellant's section 1792 conviction would increase the offense severity rating the Parole Commission will give the two convictions appellant has not appealed. The assault offenses for which appellant was convicted carry a severity rating of Category 6 (formerly "greatest I severity") and require a minimum term of incarceration of forty months.[8] If we allow appellant's conviction for the section 1792 offense to stand, his offense severity rating, for all offenses combined, will remain at Category 6. Thus, his release date could not be affected by this additional conviction. Because nothing in the record suggests that any other adverse collateral consequences would result from affirming appellant's section 1792 conviction, we apply the concurrent sentence doctrine and affirm.

AFFIRMED.

---

5. The record does not indicate, as to any of these counts, the statute under which sentence was imposed, for example, 18 U.S.C. § 4205(a) or (b) (1982). This is of no moment here, however, because the parole guidelines applicable in appellant's case require that appellant serve a minimum of 40 months (four months more than any of the concurrent sentences he received). 28 C.F.R. § 2.20 (1983). *See infra* p. 1497.

6. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

7. In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981.

8. The category of this offense is set forth in Chapter Two, "Subchapter B—Assault Offenses," found in 28 C.F.R. § 2.20.