Freddie L. HAYES, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 91–CA–1248–MR.

Court of Appeals of Kentucky.

July 3, 1992.

Rehearing Denied Oct. 9, 1992.

Paul J. Neel, Jr., Louisville, for appellant.

Chris Gorman, Atty. Gen., Robert W. Hensley, Asst. Atty. Gen., Frankfort, for appellee.

Before LESTER, C.J., and HAYES and WILHOIT, JJ.

PER CURIAM.

This is an appeal from an order denying relief pursuant to an RCr 11.42 motion the grounds for which were ineffective assistance of counsel and lack of proper jurisdiction.

By judgment entered April 29, 1970, upon a jury verdict Freddie Hayes was convicted of rape and armed robbery for which he was sentenced to life imprisonment on the first charge and ten years on the latter offense. Now he seeks relief some twenty-three years later even after his conviction was affirmed by the former Court of Appeals on March 26, 1971. Interestingly enough, Hayes failed to mention any problem with jurisdiction until the present motion. In rendering its decision, the appellate court remarked:

> It is clear, therefore, that the trial court properly concluded that the in-court identification of the appellant by the victim was independent of and "untainted" by the lineup identification. When this fact is considered in conjunction with the independent identification of appellant by Mrs. Osborne and the incriminating statement by Simpson, this court declares its belief beyond a reasonable doubt that the erroneous admission of evidence of the lineup identification was not prejudicial to the appellant.

We should point out that the court's conclusion was based, in part, upon the following evidence of the victim:

A. I was on the right hand side of the street.

D16 This is going out of town?

A. Yes.

D17 And you were going to cross over to the other side?

A. Yes. And I looked around, and when I looked around, I saw them coming after me so when I saw them, I ran out into the street. I thought if I could get across the street to the restaurant that they wouldn't get me, so there was two of them grabbed me, and the one that you have here now, he stood on the sidewalk under the street light and he stood and he waited for the other two boys to grab me.

D18 Are you referring to the one who stood under the street light and waited as the defendant, Freddie Hays?

A. Yes, sir. And he stood under the street and so the other two grabbed me and they took me back onto the sidewalk and so the other one was standing there, and the other one knocked me down.

D19 Do you recall who it was—?

A. I don't recall which one it was, but one of them knocked me down and they dragged me on my stomach up over the hill through a lady's yard, over a bank, into, it was, well, as you go back up into the Johnson School, they dragged me over the bank, but then they started up over the gravel road, they carried me.

D20 Do you know if Mr. Freddie Hays, the defendant, had his hand on you at this time?

A. Yes. He was standing—He was the one that was holding me. I mean he was the one that was holding on to my back, and the other two, one of them had my legs—the third one had my legs, and the second one, he was hold my hands, and he had one hand over my mouth to keep me from screaming, and so finally I started screaming and when I did, this other one, Simpson, hit me in the face with his fist, and there was one of them kept saying, "Kill her, why don't you kill her?" And one of them said, I don't know which one, he said, "if we do that—"

MR. GUDGEL: Object.

A. "—we'll all get in trouble."

MR. GUDGEL: Object, Your Honor, to who saying what.

THE COURT: Overruled.

D21 You may go ahead.

A. So they took me behind the school, and all three of them took me behind the school, and they ... I had on a, I had on a pair of slacks and a sweater. They took all my clothes off me, but in the meantime they had a knife. The Hays had a knife, and he held it at my throat.

D22 Who had the knife?

A. Hays.

D23 The defendant Hays?

A. Yes. He had a knife, and he held it at my throat. They undressed me and they took my jewelry, and I told them, I said, "You take my jewelry, take anything," I said, "Just let me go," I said, "And don't hurt me," and then that was when they raped me.

D24 Did I understand you that is when they raped you?

A. Yes, it was.

D25 Did the defendant, Freddie Hays, rape you?

A. Yes, he did. And after that happened, the Simpson and Hays left. They took my jewelry, they left, and the third boy, he stayed, and he helped me get my clothes back on.

The first argument presented to us is that appellant is eligible for relief under RCr 11.42 and even though he might be eligible, he is not necessarily entitled to it.

■ Hayes next contends that he is "entitled" to an evidentiary hearing upon his motion which is meritless in light of *Brewster v. Commonwealth,* Ky.App., 723 S.W.2d 863 (1987); *Glass v. Commonwealth,* Ky., 474 S.W.2d 400 (1972); *Newsome v. Commonwealth,* Ky., 456 S.W.2d 686 (1970); *Messer v. Commonwealth,* Ky., 454 S.W.2d 694 (1970); *Turner v. Commonwealth,* Ky., 404 S.W.2d 13 (1966); *Maggard v. Commonwealth,* Ky., 394 S.W.2d 893 (1965); and a host of other cases cited in the foregoing. Since we can resolve the issues based upon the record so also could the court below and we thus see absolutely no reason why an evidentiary hearing should have been held, especially in light of the reasons presented. Accordingly, there was no error in this respect.

■ Appellant urges that his counsel was ineffective because of his failure to subpoena what he first refers to as the "actual perpetrators" and later as "favorable alibi witnesses." At no place in the original record before the trial court or in any papers or briefs filed in support of his post-conviction relief in the Fayette Circuit Court or this Court does he ever name the individuals which leads us to doubt their existence. Be that as it may, we note that his trial counsel moved for a continuance for the purpose of finding the "perpetrators", but could never contact the source of the "perpetrators" whereabouts, namely, a Lexington Police Officer. Therefore, we cannot conclude that counsel would be considered ineffective because he was unable to find these unnamed individuals. Hayes, by way of brief, argues that "[t]he issuance of a subpoena is a simple matter; failure to issue it is professionally deficient." Of course, the issuance of a subpoena is a simple matter *if* the "perpetrators" existed in the first place and if they could be found. In light of the record, appellant totally fails in his ineffective assistance of counsel argument because he has been unable to demonstrate that there

would have been a "reasonable probability" of a difference in the trial within the meaning of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

 We now turn to the matter of alleged improper jurisdiction. In the first sentence of his argument relative to the subject, Hayes says:

> RCr 11.42 is the proper vehicle to contest lack of jurisdiction by a court. *McMurray v. Commonwealth,* Ky.App., 682 S.W.2d 794 (1985).

We do not necessarily agree that *McMurray* stands for the proposition stated for we believe that jurisdiction more properly addresses itself to the avenue of direct appeal and, especially so in this cause where there was such a step taken and jurisdiction was not a subject thereof.

Hayes attacks the juvenile court order waiving jurisdiction over him. To demonstrate the fallaciousness of his argument he urges in part that the order does not state whether he was represented at the hearing by an attorney when a casual reading of the document noted his attorney's name thereon. He further charges that the entry was not in conformity with the mandates of *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), but as was noted in the dissent that case involved "the construction of a statute applicable only to the District of Columbia." We have no hesitation in holding that the court order of which complaint was made was valid as of the time it was entered, April, 1968, in that it more than substantially complied with the mandates of *Kent.*

What is of more concern to us is the twenty-three years lapse between conviction and the filing of the motion. We recall the words of *McKinney v. Commonwealth,* Ky., 445 S.W.2d 874, 877 (1969), to the effect:

> We recognize that RCr 11.42 authorizes the prisoner to petition for post-conviction relief, " * * * at any time * * * ", nevertheless, we see no reason why the requirement to raise this issue " * * * in

due season * * * " should not apply at least to the extent of the proof necessary to sustain the petition. McKinney waited almost 14 years before instituting this proceeding. The right to post-conviction relief was widely publicized beginning in 1961 when the Supreme Court of the United States decided *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (1963), and for the next few years as it ruled in *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733 (1963); *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205 (1964) and *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

This court, to provide a method by which a prisoner could move to vacate, set aside or correct a sentence adopted RCr 11.42 in 1962. Since then prisoners and jailhouse lawyers have plagued this court (see 6 Ky.Digest Criminal Law 998), and its counterparts in other states with applications for post-conviction relief. We are unwilling to assume that McKinney was unaware of this opportunity, as other prisoners knew of it. *Copeland v. Com.,* Ky., 415 S.W.2d 842 (1967).

More recently we have written that a defendant, whether represented by counsel or indigent, is under a duty "to bestir himself to some extent to protect his rights and remedies." *Adams v. Commonwealth,* Ky.App., 551 S.W.2d 249 (1977). Support for the *Adams* view can be found in the opinions of the several federal circuits, i.e., *Baxter v. Estelle,* 614 F.2d 1030 (5th Cir. 1980) cert. den., 449 U.S. 1085, 101 S.Ct. 873, 66 L.Ed.2d 810 (1981); *Strahan v. Blackburn,* 750 F.2d 438 (5th Cir.1985).[1]

Whether it be a rule of court, a statute or a jurisprudential principle, the rule of reason or reasonableness must be applied. It is not unreasonable to note that everything of which appellant complains was known to him in 1968 yet he waits until the

1. See pp. 441, 442 and 443 of the *Strahan* opinion for a list of cases (including the Sixth Circuit) treating laches in post-conviction relief matters.

victim and witnesses are unavailable and memories drastically dimmed. True enough, his lawyer is alive and active but the fact remains that neither we nor the trial courts are going to deal with delayed claims such as we have in this appeal. The post-conviction relief procedures have been the subject of such extensive abuse that the Supreme Court of the United States discussed the application of "inexcusable neglect" to post-conviction matters in *McCleskey v. Zant*, 499 U.S. ——, ——, 111 S.Ct. 1454, 1468, 113 L.Ed.2d 517, 542 (1991). In that opinion Justice Kennedy, writing for the majority (p. —— of 499 U.S., p. 1469 of 111 S.Ct., p. 543 of 113 L.Ed.2d) pointed out that "[p]erpetual disrespect for the finality of convictions disparages the entire criminal justice system" and then quoted Bator 76 Harv.L.Rev., at 452–453 to the effect:

> A procedural system which permits an endless repetition of inquiry into facts and law in a vain search for ultimate certitude implies a lack of confidence about the possibilities of justice that cannot but war with the underlying substantive commands.... There comes a point where a procedural system which leaves matters perpetually open no longer reflects humane concern but merely anxiety and a desire for immobility.

There is yet another reason why appellant's motion must fail. He overlooks that a jury found him guilty of robbery and rape while he and two companions followed and attacked a lone female. He got a trial where examination of the record clearly reflects that he received a very able defense with no procedural stone left unturned. He waited twenty-three years when he knew or should have known what he now claims were errors in his conviction process. We find no such errors.

The judgment is affirmed.

LESTER, C.J., concurs.

HAYES, J., concurs.

WILHOIT, J., concurs in result.

WILHOIT, Judge, concurring in result.

I concur in the result reached by the majority, however, I do not agree that the equitable doctrine of laches has any relevance to a criminal proceeding under RCr 11.42. If it does, then, of course, it must be plead as required by CR 8.02. *See* RCr 13.04.