[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 24, 2007
THOMAS K. KAHN
CLERK

No. 06-11304
Non-Argument Calendar

_____

D. C. Docket No. 05-00409-CR-T-24-MAP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTOPHER BLUE GUNN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(January 24, 2007)**

Before BIRCH, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Christopher Blue Gunn appeals his 151-month sentence imposed after he

pled guilty to conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii) and 21 U.S.C. § 846, possession with intent to distribute 5 kilograms or more of cocaine, in violation 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Gunn raises a number of challenges relating to his sentence.  We AFFIRM.

## II.  BACKGROUND

Gunn's convictions arose out of a series of drug-related transactions in August 2005 involving Gunn, his girlfriend Amy Maggio, Benny Alvarez, and Salvador Cordova.  Acting pursuant to a tip from a confidential informant, law enforcement agents investigating a drug trafficking ring in the Tampa area undertook surveillance of a number of locations, including the home where Gunn and Maggio resided together, and the Sheraton Suites Hotel ("Sheraton") where Maggio was employed.  During the course of the surveillance operation, agents first observed Alvarez departing the Gunn-Maggio home and driving to the Sheraton.  Cordova was observed entering the Sheraton, leaving with a piece of luggage in his possession, and driving to the room he was renting at the Mainsail Village Hotel ("Mainsail").  Several hours later, Cordova departed his room at the Mainsail, carrying smaller bags, and drove the bags to the Gunn-Maggio residence.

2

A week after observing these events, agents searched trash that had been left outside of the Gunn-Maggio residence, and found several plastic bags containing a white powdery substance. Tests revealed that the substance was cocaine.

Approximately two weeks later, agents again observed Cordova and Gunn, who drove north to Georgia and then back to Florida on the same afternoon. Gunn and Maggio were later seen entering the Sheraton, carrying several pieces of luggage taken from Maggio's car. Gunn delivered the bags to a room at the Sheraton that was registered in Cordova's name. Alvarez was observed entering the room and departing with a piece of luggage that he placed in his vehicle. Law enforcement agents subsequently apprehended Alvarez, and found approximately 11 kilograms of cocaine in the vehicle. After arresting Alvarez, the agents proceeded to arrest Cordova and Gunn while they were at the Sheraton. Agents discovered approximately 10 kilograms of cocaine in the hotel rooms that Gunn and Cordova had been renting there.

Maggio was arrested as she was entering her vehicle in front of the Gunn-Maggio residence; a search of her vehicle uncovered a bag containing scales, cutting agents, a wooden press, a spoon, and plastic bowls. Agents subsequently searched Gunn's residence, pursuant to a warrant, and found three heat sealers, a full box of vacuum sealable bags, and a drug ledger. Agents also found a .45

3

caliber firearm and a box of ammunition located under the mattress in the master bedroom. In total, agents seized 21.8 kilograms of cocaine from the arrests of Gunn, Alvarez, Cordova, and Maggio.

Gunn was subsequently charged with one count of conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, one count of possession with intent to distribute 5 kilograms or more of cocaine, and one count of possession of a firearm by a convicted felon. His alleged co-conspirators, Maggio, Alvarez, and Cordova, were charged separately. Gunn pled guilty to all three counts without a written plea agreement.

The probation officer prepared a pre-sentence investigation ("PSI") report in connection with Gunn's case. The PSI recommended a base offense level of 34, based on a drug quantity of 21.8 kilograms of cocaine. See U.S.S.G. § 2D1.1(c). The probation officer also recommended a two-level enhancement for possession of a firearm in connection with an offense involving drugs, U.S.S.G. § 2D1.1(b)(1), based on the firearm that agents had discovered in the bedroom at the Gunn residence. This resulted in an offense level of 36. After recommending a two-level reduction for Gunn's accepting responsibility, U.S.S.G. § 3E1.1(a), and advising that the government further intended to seek a one-level reduction for Gunn's timely notification of his intent to plead guilty, U.S.S.G. § 3E1.1(b),

Gunn's recommended offense level was 33. With a criminal history category of I, this resulted in a Guidelines range of 135 to 168 months of imprisonment.

Gunn filed his objections to the PSI, contending that the gun discovered at his home was not connected to his drug charges, and that therefore a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) was inappropriate. Specifically, he argued that the firearm that the agents had discovered at his home had been purchased in the wake of a break-in, and had been kept in his master bedroom. Because the firearm was kept in the bedroom and the drug activity had occurred in the garage and at various hotels in Tampa, Gunn argued that a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) was inappropriate. In addition, because the firearm was not connected to the alleged offense, Gunn argued that he was entitled to a two-level reduction pursuant to the safety valve provision of U.S.S.G. § 2D1.1(b)(7).

Prior to his Sentencing Hearing, the government indicated that Gunn had given misleading statements to law enforcement agents in connection with the preparation for Maggio's separate trial, and suggested that Gunn had recently attempted to minimize his role in the overall conspiracy. Contending that Gunn had not accepted responsibility by his subsequent conduct, the government stated that it was no longer in favor of a two-level reduction for acceptance of

responsibility. The government also stated that it no longer intended to file a motion for an additional one-level reduction, see U.S.S.G. § 3E1.1(b), since the misleading information Gunn provided had not permitted the government to allocate its resources efficiently in preparation for trial.

At Gunn's sentencing hearing the government first attempted to rebut Gunn's argument that the firearm found in his bedroom was not sufficiently connected to his drug crimes. First, the government called a witness, Joel Garcia, who testified that he had purchased cocaine at Gunn's former home[1] on approximately three separate occasions, that Gunn had shown Garcia the weapon while Garcia was in the house purchasing cocaine, that Gunn mentioned that he had purchased the weapon following a break-in at that home, and that Garcia had seen drug-related items, such as weighing scales, in the kitchen at his former home. In addition to Garcia's testimony, the government argued that cocaine residue had been found on trash bags in front of Gunn's current house in August 2005, that a search of Gunn's present home had uncovered a heat sealer, plastic bags, and a drug ledger, and that other drug paraphernalia (scales, cutting agents, a spoon, and bowls) had been found in Maggio's car, which was parked in front of the Gunn

---

[1] The witness, Mr. Garcia, testified that these drug transactions had taken place at Gunn's prior residence, where Gunn and Maggio resided until 2005. The home that was searched pursuant to a warrant (that is, the home where the weapon was eventually found) was his current residence, which Gunn and Maggio had moved into in the spring of 2005. R6 at 9-10.

home. In light of this evidence, the government argued that it was not "clearly improbable" that the weapon found in Gunn's bedroom was connected with his drug offenses, see U.S.S.G. § 2D1.1, cmt. n.3, and that, accordingly, a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm was appropriate.

As to the issue of acceptance of responsibility, the government reiterated that, after Gunn pled guilty, he had attempted to modify his version of events so as to minimize his role in the conspiracy. The government contended that Gunn had not been truthful as to his relevant conduct in the wake of entering his plea, and that therefore he had acted in a manner inconsistent with a true acceptance of responsibility. Accordingly, the government asked that the PSI's recommended two-level reduction for acceptance of responsibility be discarded in the final sentencing. The government also indicated that government resources had not been conserved because of Gunn's subsequent false statements, which required additional investigation, and that therefore the government no longer intended to move for an additional one-level reduction pursuant to § 3E1.1.

In deciding these issues, the district court first concluded that Gunn had not demonstrated that it was "clearly improbable" that the firearm was related to the drug trafficking charges. U.S.S.G. § 2D1.1, cmt. n.3. While the court recognized

that the government's witness had testified to purchasing drugs at Gunn's former residence– and not the one in which the gun was eventually found–the court nevertheless observed that

> Mr. Gunn was dealing a lot drugs . . . . [And] in the residence where the gun was found there [were] . . . three heat sealers, which are used to bag cocaine. There was one found in the master bedroom night table, there were two found in the garage, there were baggies found . . . with the trash pull [from Gunn's home] that had cocaine residue . . . . So, the defendant has not met [his] burden showing that it's clearly improbable that it's related to the drug trafficking offense, and I think the two levels is appropriately scored.

R6 at 71. Accordingly, the court imposed the two-level enhancement for possession of a firearm, pursuant to § 2D1.1(b)(1), based on the firearm that had been found in the home. In addition, the court denied the defendant's motion for a two-level safety valve reduction pursuant to U.S.S.G. § 2D1.1(b)(7), as the defendant had not met the safety valve criteria, in that he had "possess[ed] a firearm . . . in connection with the offense." U.S.S.G. § 5C1.2 (a)(2); see R6 at 88 (concluding that "he possessed the firearm, and he possessed it in connection with the crime").

As to the issue of acceptance of responsibility, the court rejected the government's claim that Gunn was no longer entitled to a two-level reduction under § 3E1.1(a). Specifically, the court concluded that the government had not

8

presented enough evidence to suggest that Gunn had not accepted responsibility. The court explained: in view of "the fact that he has entered a plea, and based upon the fact that he told the magistrate judge that he was pleading guilty because he was guilty. . . I am not aware that he's done anything after that [,] other than [to] suggest that he was going to testify for his co-defendant" that would militate against a two-level reduction for accepting responsibility. R6 at 88. Thus the court adhered to the PSI's recommended two-level decrease under § 3E1.1(a).

The court stated that the government was entitled to abstain from filing a § 3E1.1(b) motion–even if the court disagreed with its basis for doing so–since, "under the guidelines [the government] must <u>move</u> for [the defendant] to get that additional [one] level." R7 at 32 (emphasis added). The court suggested, in other words, that it lacked the ability to force the government to file a motion for an additional one-level decrease, since the guidelines are clear that the decision to seek an additional decrease under § 3E1.1(b) remains in the prosecutor's discretion.

In light of these decisions, the court determined that Gunn had a total offense level of 34. With a criminal history category of I, this resulted in a Guidelines range of 151 to 188 months of imprisonment. After considering the factors set forth in 18 U.S.C. § 3553(a), including the nature of the crime, Gunn's

9

own testimony at the hearing surrounding his involvement in the crime, the fact that Gunn had violated a condition of probation by not reporting regularly to the probation officer, and the sentencing range prescribed by the advisory Sentencing Guidelines, the court imposed a final sentence of 151 months of prison. This appeal followed.

### III. DISCUSSION

Gunn raises three issues on appeal. First, he challenges the government's failure to file a motion for an additional one-level reduction pursuant to U.S.S.G. § 3E1.1(b), claiming that its failure constitutes reversible error. Second, Gunn contends that the district court erred in applying a two-level enhancement for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1) and in refusing to apply a two-level safety valve reduction under U.S.S.G. § 2D1.1(b)(7). Finally, Gunn asserts that his sentence was procedurally and substantively unreasonable, and that therefore it must be vacated. We address each of these contentions in turn.

A. Government's Failure To Move For A Reduction Under U.S.S.G. § 3E1.1(b)

Gunn first argues that the government improperly refused to file a motion for a one-level reduction under U.S.S.G. § 3E1.1(b). The PSI in Gunn's case initially indicated that Gunn had assisted authorities "by timely notifying authorities of his intention to enter a plea of guilty," see U.S.S.G. § 3E1.1(b), and

10

that therefore the government intended to file a motion seeking an additional one-level reduction. Subsequently, however, the government modified that position, contending that Gunn had made false statements in preparation for co-defendant Maggio's trial, some of which required further investigation on the part of the government. Accordingly, the government declined to move for an additional one-level reduction under § 3E1.1(b). Gunn argues that there was no legitimate reason for the government's refusal to file a § 3E1.1(b) motion, and that therefore its refusal constitutes reversible error.

We review the district court's interpretation of the sentencing guidelines *de novo* and its factual findings for clear error. United States v. Jordi, 418 F.3d 1212, 1214 (11th Cir.), cert. denied, 126 S. Ct. 812 (2005). Section 3E1.1(b) permits a one-level reduction in a defendant's offense level where the defendant has

> assisted authorities . . . by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently.

U.S.S.G. § 3E1.1(b). However, such a reduction is only to be awarded by the court "upon motion of the government." Id.[2] The plain language of § 3E1.1(b) vests the

---

[2] Indeed, the commentary to § 3E1.1(b) explicates that "[b]ecause the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing." Id., cmt. n.6 (emphasis added).

11

prosecutor with broad discretion in deciding whether to seek an additional one-level reduction under § 3E1.1(b).

Consequently, we have seen fit to reject a defendant's claim for a one-step reduction in his sentence where there was no government motion filed in support of such a reduction.  See United States v. Wade, 458 F.3d 1273, 1282 (11th Cir. 2006), pet. for cert. filed, (Nov. 1, 2006) (No. 06-7622).  In addition, our sister circuits have construed the government's filing of a formal motion as being "a necessary pre-requisite to the additional one-level decrease."  United States v. Sloley, 464 F.3d 355, 359 (2d Cir. 2006); see also United States v. Borer, 412 F.3d 987, 991 (8th Cir. 2005) (stating that the "upon motion" language of § 3E1.1(b) "add[s] a requirement that the government authorize the court to grant a third level reduction").

This is not to say that the government's broad discretion in filing a motion for a reduction is beyond our review.  See Sloley, 464 F.3d at 360.  Indeed, the Supreme Court, in addressing a substantial assistance motion for a downward departure pursuant to § 5K1.1, has made clear that "federal district courts have authority to review a prosecutor's refusal to file [such a] motion . . . if they find that the refusal was based on an unconstitutional motive," such as the defendant's race or religion.  Wade v. United States, 504 U.S. 181, 185-86, 112 S. Ct. 1840,

12

1844 (1992); <u>United States v. Nealy</u>, 232 F.3d 825, 831 (11th Cir. 2000).

Here, however, Gunn has not alleged that the government refused to file a § 3E1.1(b) motion for a one-level motion based on an unconstitutional motive; he argues that, because he accepted responsibility and he timely notified the authorities of his intent to plead guilty, the government should have been compelled to file a motion seeking a one-level reduction. We reject this contention. Absent an allegation of an unconstitutional motive similar to the one described by the Supreme Court in <u>Wade</u>, we will not second-guess the prosecutor's decision to decline to seek an additional one-level reduction pursuant to § 3E1.1(b).[3] See <u>Nealy</u>, 232 F.3d at 831.

The fact that the sentencing judge indicated that she did not agree with or understand the government's failure to move for a one-level reduction does not modify this conclusion. To be sure, as our sister circuit has explained, the "seemingly contradictory perspectives" of the government and the sentencing

---

[3] Gunn argues that <u>Wade</u> also permits a court to grant a defendant in his position relief if the prosecutor's refusal to move for a reduction is not "rationally related to a legitimate government end." See <u>Wade</u>, 504 U.S. at 186, 112 S. Ct. at 1844. We have never construed <u>Wade</u> this broadly. Moreover, even if we were to accept this formulation of <u>Wade</u>, Gunn's argument would nevertheless fail, as the government in his case had a legitimate, good faith belief that Gunn was being deceptive as to his role in the conspiracy–which thereby required additional investigation on the government's part to prepare for his co-defendant's trial. As in <u>Sloley</u>, "the prosecutor was honestly dissatisfied with . . . [Gunn's] acceptance of responsibility . . . . As a consequence, its refusal to make a § 3E1.1(b) motion was justified." See 464 F.3d at 361.

13

judge with respect to which reductions a particular defendant is entitled to are entirely "permissible [,] given their different roles in the plea bargaining process." Sloley, 464 F.3d at 357. In sum, we discern no error concerning the government's failure to seek a § 3E1.1(b) reduction.

B. Sentencing Enhancement Based on Possession of a Firearm

Gunn also argues that the district court erred in overruling his objections to the two-level firearm enhancement under U.S.S.G. § 2D1.1(b)(1) and in denying a two-level safety valve reduction under U.S.S.G. § 2D1.1(b)(7). With respect to the firearm enhancement, Gunn argues that he satisfied his burden of showing that it was "clearly improbable" that the firearm was connected with the drug offense, § 2D1.1(b)(1) cmt. n.3, because the firearm was in the master bedroom, not the hotel where Gunn was arrested and the drugs were found. In addition, Gunn points out that the only drug-related evidence in the master bedroom was a heat sealer. Similarly, Gunn argues that, because the firearm was not connected to the offense with which he was charged, he also was entitled to a two-level safety valve reduction pursuant to U.S.S.G. § 2D1.1(b)(7).

1. Section 2D1.1(b)(1) enhancement

"We review the district court's findings of fact under U.S.S.G. § 2D1.1(b)(1) for clear error and the application of the guidelines to those facts *de novo*." United

14

States v. Gallo, 195 F.3d 1278, 1280-81 (11th Cir. 1999).  Section 2D1.1(b)(1)

provides for a two-level enhancement for an offense under 21 U.S.C. § 841(b)(1)

"[i]f a dangerous weapon (including a firearm) was possessed."  "To justify a

firearms enhancement, the government must either establish by a preponderance of

the evidence that the firearm was present at the site of the charged conduct or

prove that the defendant possessed a firearm during conduct associated with the

offense of conviction."  United States v. Stallings, 463 F.3d 1218, 1220 (11th Cir.

2006).  After the government's initial burden is met, "the evidentiary burden shifts

to the defendant to show that a connection between the firearm and the offense is

'clearly improbable.'"  United States v. Hall, 46 F.3d 62, 63 (11th Cir. 1995) (per

curiam); see also U.S.S.G. § 2D1.1 cmt. n.3 ("The adjustment should be applied if

the weapon was present, unless it is clearly improbable that the weapon was

connected with the offense.").

　　　In deciding whether the government satisfied its initial burden, the

defendant's relevant conduct includes "acts that were part of the same course of

conduct or common scheme or plan as the offense of conviction."  Stallings, 463

F.3d at 1220 (citation and internal quotations omitted).  Moreover, in the context of

a conspiracy case such as Gunn's, the § 2D1.1(b)(1) enhancement may be applied

"if the firearm[] [is] found in a place where acts in furtherance of the conspiracy

15

took place." United States v. Pham, 463 F.3d 1239, 1246 (11th Cir. 2006) (per curiam) (citation omitted); see also United States v. Hansley, 54 F.3d 709, 716 (11th Cir. 1995) (holding that the § 2D1.1(b)(1) enhancement was proper where a firearm and drug-related items were found in the defendant's residence where he had also engaged in conspiratorial conversations).

Here, the district court properly concluded that the firearm enhancement under § 2D1.1(b)(1) was appropriate. Although Gunn was arrested and the cocaine was seized elsewhere, the government established, by a preponderance of the evidence, that the home where Gunn's firearm was discovered was a location in which substantial drug activities were occurring throughout the course of the conspiracy, in August 2005. The undisputed facts established that (1) trash outside of Gunn's residence revealed several plastic bags containing a white powdery substance that tested positive for cocaine; (2) Maggio was arrested immediately after leaving Gunn's home, and a search of her car (in front of the home) revealed scales, cutting agents, and other equipment used in preparing cocaine; and (3) a search of the home revealed three heat sealers (one in the master bedroom and two in the garage), a full box of vacuum sealable bags, and several loose bags in the master bedroom, as well as a drug ledger. This evidence suggests that the firearm in question was "found in a place where acts in furtherance of the conspiracy took

16

place," see Pham, 463 F.3d at 1246, thereby warranting a two-level enhancement. See also Hall, 46 F.3d at 64 (imposing § 2D1.1(b)(1) enhancement in a conspiracy case where gun was found in a bedroom, proximate to other drug paraphernalia and in a house where conversations concerning the importation of marijuana had occurred).

In response to this evidence, Gunn has failed to satisfy his burden of showing that it was "clearly improbable" that the firearm was connected to the drug offenses. Hall, 46 F.3d at 63. Relying on maps of the house, which Gunn includes with his brief, he argues that the bedroom (in which the gun was located) was a good distance from the garage in which the majority of his drug-dealing equipment was present. Gunn cites to no case law, however, in which we have taken a "room-by-room" approach to firearm enhancements pursuant to § 2D1.1(b)(1). The evidence shows that a firearm was in the home, and that drugs and drug paraphernalia were in the home; we need not inquire as to whether they were located in different rooms of the house.

Gunn further contends that the firearm was purchased to protect himself from break-ins, but this argument is not sufficient to establish a clear improbability between the weapon and his drug activities. In fact, the district court properly observed that the evidence suggested that Gunn was dealing drugs from his home,

that it was known that Gunn was dealing drugs from his home, and that this was likely "why [Gunn] had the home invasion" in the first place.  R7 at 3.  As in United States v. Fields, here Gunn "trafficked in lucrative and illegal drugs . . . . It is not clearly improbable that [he] felt the need to protect [his] inventory and proceeds as well as [himself] while he was engaging in that high risk activity."  See 408 F.3d 1356, 1359 (11th Cir. 2005).  In light of the overwhelming evidence of drug activity taking place at the home, Gunn has not established that it was clearly improbable that his weapon was related to the larger drug trafficking conspiracy.[4]  Thus, the district court did not err in applying the § 2D1.1(b)(1) enhancement.

2.  Safety Valve Relief Pursuant To U.S.S.G. § 2D1.1(b)(7)

We review a district court's factual determinations and subsequent denial of "safety-valve" relief for clear error.  United States v. Camacho, 261 F.3d 1071, 1073 (11th Cir. 2001) (citation and internal quotations omitted).  Section 2D1.1(b)(7) of the Guidelines instructs the district court to reduce a defendant's offense level by an additional two levels if he satisfies the five criteria set forth in §

---

[4] Gunn's reliance on United States v. Cooper, 111 F.3d 845, 846-47 (11th Cir. 1997) is unavailing.  In Cooper, we concluded that an enhancement under § 2D1.1(b)(1) was improper where the defendant's firearms were found at his residence but "the drugs were found off-premises, at a mini-warehouse."  Id. at 847.  Cooper, however, involved a single count of drug possession, not (as in Gunn's case) a count for conspiracy.  That key distinction was pointed out in Cooper; as the court observed, a conspiracy charge allows for a broader approach to the § 2D1.1(b)(1) firearm enhancement, permitting an enhancement so long as "weapons . . . [are] found where acts in furtherance of the conspiracies took place."  Id.; see Pham, 463 F.3d at 1246.

18

5C1.2(a). Among the five criteria listed in the "safety valve" provision, however, is the requirement that the defendant cannot have "possess[ed] a firearm or other dangerous weapon . . . in connection with the offense. U.S.S.G. § 5C1.2(a).

As discussed previously in our analysis of the § 2D1.1(b)(1) enhancement, the undisputed facts establish that Gunn possessed the firearm in connection with the drug trafficking offenses with which he was charged, because acts that furthered the drug conspiracy occurred at his residence. Because Gunn did not satisfy the five criteria of § 5C1.2(a)(2), the district court acted properly in denying him a two-level safety valve reduction under U.S.S.G. § 2D1.1(b)(7) .

C. Reasonableness of Gunn's Sentence

Finally, Gunn contends that his 151-month sentence is both procedurally and substantively unreasonable under United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005). Gunn argues that the district court placed undue weight on the Guidelines and treated the other § 3553(a) factors as mere suggestions. He also challenges the district court's statement that his timely notification of his intention to plead guilty was not a reason to impose a sentence below the guideline range; in effect, he argues that the court misapprehended its authority to depart from the Guidelines, and that the court should have reduced his sentence in light of the fact that the government failed to file a § 3E1.1(b) reduction. As to the substance of his

19

sentence, Gunn argues that his low criminal history, the fact that he was a good father, and that his co-defendants subsequently received § 3E1.1(b) reductions warranted a sentence below the guideline range.

We review a defendant's sentence for reasonableness. United States v. Crawford, 407 F.3d 1174, 1179 (11th Cir. 2005). "A sentence may be reviewed for procedural or substantive unreasonableness." United States v. Hunt, 459 F.3d 1180, 1182 n.3 (11th Cir. 2006). "A sentence may be unreasonable if it is the product of a procedure that does not follow Booker's requirements, regardless of the actual sentence." Id. "Additionally, a sentence may be substantively unreasonable, regardless of the procedure used." Id.

Among the factors that a district court should consider at sentencing are: the nature and circumstances of the offense; the history and characteristics of the defendant; the need for adequate deterrence and protection of the public; the kinds of sentence and the sentencing range recommended by the Guidelines; any pertinent policy statements issued by the Sentencing Commission; any violation of probation or supervised release on the part of the defendant; and the need to avoid unwarranted sentencing disparities. See 18 U.S.C. § 3553(a)(1)-(7). In Hunt we made clear that "a district court may determine, on a case-by-case basis, the weight to give to the Guidelines, so long as that determination is made with reference to

the remaining section 3553(a) factors that the court must also consider in calculating the defendant's sentence." 459 F.3d at 1185. In addition, we have stated that "nothing in <u>Booker</u> or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." <u>United States v. Scott</u>, 426 F.3d 1324, 1329 (11th Cir. 2005).

We discern no error in the manner in which Gunn's sentence was calculated. The court referenced a number of section 3553(a) factors, including the nature of the offense (*i.e.* a drug crime), the fact that Gunn had violated the conditions of his probationary release, and the type of sentence and sentencing range recommended by the Guidelines. After expressly stating that she had "consider[ed] the factors" set forth in section 3553(a), R7 at 34, the sentencing judge imposed Gunn's sentence. We cannot say that the court gave undue weight to the Sentencing Guidelines in calculating Gunn's sentence. Nor was the court obligated to "recite a laundry list of the § 3553(a) factors" that it considered in reaching Gunn's sentence. <u>Scott</u>, 426 F.3d at 1329 (citation omitted). Finally, the court did not misapprehend its authority to depart from the range recommended from the Guidelines, nor should have been required to do so, based on the fact that the government did not move for a one-level § 3E1.1(b) reduction. Rather, the court

21

considered Gunn's request for a downward departure in his case, and rejected it on its merits. There is no evidence to suggest that Gunn's sentence was procedurally unreasonable.

We also hold that Gunn's 151-month sentence was substantively reasonable. First, we note that Gunn's sentence was within the recommended Guidelines range. While a sentence within the Guidelines range is not *per se* reasonable, we have stated that when a sentence is within the Guidelines' range "we ordinarily will expect that choice to be a reasonable one." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005) (per curiam). Moreover, Gunn's sentence was at the low end of the recommended range, and was below the statutory maximum of life imprisonment. In addition, the district court granted Gunn a two-level reduction for accepting responsibility under § 3E1.1(a)–this, despite the government's objections to any such reduction. As was discussed in the previous section, absent a formal motion on the part of the government, the sentencing judge was not obligated to grant any additional reductions under § 3E1.1(b). Finally, we reject Gunn's contention that the district court should have adjusted for sentencing disparities between Gunn and his fellow co-defendants, all of whom later received § 3E1.1(b) relief, because these co-defendants were sentenced based upon the unique facts of each of their respective cases.

The record also suggests that the district court considered a number of § 3553(a) factors in arriving at Gunn's final sentence, including the nature of the offense (and the fact that it involved a sizeable amount of cocaine and a firearm), Gunn's lack of a prior criminal history, Gunn's own testimony that he was a good father, and the fact that Gunn violated the conditions of his pre-trial release. After giving due consideration to these factors, the district court settled on a sentence that was at the low end of the Guidelines range, but one which the court believed was "sufficient, but not greater than necessary to comply with the purposes set forth in [§ 3553(a)(2)]." See 18 U.S.C. § 3553(a). In light of this evidence, there is nothing to suggest that Gunn's 151-month sentence was substantively unreasonable.

## III. CONCLUSION

Gunn appealed the sentence imposed by the district court, arguing that (1) the court erred in declining to grant a one-level reduction under U.S.S.G. § 3E1.1(b); (2) the court erred in imposing a two-level increase for possession of a firearm, U.S.S.G. § 2D1.1(b)(1), and in not granting a two-level safety valve reduction under U.S.S.G. § 2D1.1(b)(7); and (3) the 151-month sentence that the court imposed was unreasonable. Having carefully reviewed the record, we discern no error in Gunn's sentence. Accordingly, his sentence is **AFFIRMED.**