[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 6, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-12685
Non-Argument Calendar
_____

D. C. Docket No. 05-00010-CR-6

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VANDARREL LEON DOE,
a.k.a. Dwan Devon Doe,
a.k.a. Black

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(February 6, 2007)

Before BLACK, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Vandarrel Leon Doe appeals his convictions for manufacture of cocaine base and conspiracy to manufacture and distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846. On appeal, Doe argues that the district court erred by failing to find a violation of the Speedy Trial Act, admitting three of his prior convictions under Rule 404(b) of the Federal Rules of Evidence, denying his motion for judgment of acquittal, giving an erroneous jury instruction on the conspiracy offense, and denying his motion for a new trial based on the interests of justice. For the reasons set forth more fully below, we affirm.

## I. Facts

Doe's codefendant, Stuart John Greger, pled guilty prior to trial. Prior to trial, the government notified Doe of its intent to offer at trial evidence of six prior felony cocaine convictions, occurring between 1989 and 2001, under Fed.R.Evid. 404(b). The oldest five convictions were for possession of cocaine. The most recent conviction was for "Possession/Purchase/Sell/Delivery of cocaine."

At trial, Kent Munsey, a task force agent with the Drug Enforcement Administration ("DEA"), testified that, on April 6, 2005, a confidential source ("CS") and an undercover agent met with Greger, and the CS purchased 50.9 grams of cocaine base from Greger. On April 8, 2005, Greger sold the CS cocaine base and powder cocaine. Greger was taken into custody following this transaction

and told Munsey that he obtained his cocaine base from a black male known to him as "Black," who cooked the cocaine base. Munsey recorded a call made by Greger, which was played to the jury. In this conversation, Greger referred to "circles." He explained to the other speaker that "they" complained about the circles, but took all seven and said they would give him a chance to make it up later. The other speaker responded, "I'll do that there." Greger responded that he was trying to get it, and the other speaker responded, "But you know that will cost them more." Munsey testified that, based on a photograph of Doe, Greger identified Doe as the person who cooked the cocaine base for him. This photograph was admitted into evidence. Munsey also testified that Doe was listed as the subscriber of the telephone number called during Greger's conversation. The government also introduced approximately four months of telephone records for this phone. Munsey testified that the records showed consistent contact between the this number and Greger's number between January and April 8, 2005.

Greger, who had pled guilty to distribution of crack cocaine, testified that, between January 2005 and April 2005, he sold cocaine and crack cocaine. He identified Doe, who he knew as Black, and stated that he met Doe around the end of 2004 and he estimated that Doe cooked crack cocaine for him two or three times a month beginning around January. Greger paid Doe by giving him cocaine, which

Doe would use to cook, and Doe would also keep some for himself. Regarding the tape recording, Greger explained, inter alia, that the "circles" referred to the cocaine cookies, which were circular because they were cooked in a round pot, and that the cookies weighed less than they were supposed to weigh. Greger testified that Black's voice was on the tape.

At side bar, the government explained that it agreed to enter three of the prior convictions and that they went to the issues of intent, lack of mistake, and identity. The court permitted the introduction of the evidence, noting that the jury might have some question as to identity and intent. The government introduced evidence of two cocaine possession convictions from August 1989 and one from December 1990.

Doe called Pamela Tigner, his fiancee. Tigner testified, inter alia, that everybody in the house, including her children (aged 9-19) and their friends used the cell phone which was called by Greger in the recorded conversation. Tigner, who worked as a cook, testified that she would be able to tell if anyone was cooking in her kitchen and denied seeing signs of anyone doing so. Tigner further testified that the voice on the recorded call was not Doe's voice.

On cross-examination, the government asked Tigner about her drug convictions from Jacksonville, Florida in 1994. Tigner denied being convicted or

pleading guilty to the sale and manufacture of cocaine, although she admitted being arrested in Jacksonville. When the government showed Tigner a copy of her criminal history, the following discussion took place:

THE COURT: Ms. Tigner, let me remind you that you took an oath to tell the truth. If you do not tell the truth, you will have committed perjury. Perjury is a federal crime. Listen to the questions carefully?

A [Tigner] Okay.

THE COURT: The answers are being recorded. The Court will direct further investigation.

A Okay.

Upon further questioning by the government in reference to Tigner's criminal history, she denied being convicted of a crime, explaining that she went to court for the charge of the sale, manufacture, and delivery of cocaine, but that she was told it would not be on her record because the person she went to jail with claimed it all and she would not sign anything. After this explanation, the court stated, "All right. You will investigate this matter, Mr. Konche, and take appropriate actions." Tigner then clarified her position that she was arrested and charged, but was told that the charge would not end up on her record.

Doe testified that his nickname was Black. Doe admitted getting into trouble in the past, but denied having any contact with cocaine in Georgia. He

5

only had contact with Greger once before April 2005, regarding a job to move pine straw. He denied cooking cocaine for Greger, ever cooking cocaine, or knowing how to cook cocaine. Doe explained that everybody used his phone and that it was not him on the tape.

On cross-examination, Doe admitted to convictions for seven prior felony drug convictions involving cocaine between 1989 and 2001. The government also replayed a portion of the taped conversation and asked Doe to say one of the sentences. Doe complied, and the government requested that Doe "try to say it normally." Doe then repeated the line. The jury subsequently returned guilty verdicts as to both counts of the indictment.

## II. Standard of review

We review a claim under the Speedy Trial Act de novo and review a district court's factual determinations on excludable time for clear error. United States v. Dunn, 345 F.3d 1285, 1288 (11th Cir. 2003). We review the district court's admission of evidence under Rule 404(b) for abuse of discretion. United States v. Matthews, 431 F.3d 1296, 1311 (11th Cir. 2005), cert. denied, 127 S.Ct. 46 (2006). "[W]hen employing an abuse-of-discretion standard, we must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." United States v. Frazier, 387 F.3d 1244, 1259 (11th Cir.

6

2004) (en banc), cert. denied, 544 U.S. 1063 (2005). However, we will not reverse Doe's convictions if the admission of the prior conviction evidence was harmless. United States v. Harriston, 329 F.3d 779, 789 (11th Cir. 2003). We review the sufficiency of the evidence de novo, "viewing the evidence in the light most favorable to the government" and making all reasonable inferences and credibility choices in favor of the government and the jury's verdict. United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005). "We review the legal correctness of a jury instruction de novo, but defer on questions of phrasing absent an abuse of discretion . . . ." United States v. Prather, 205 F.3d 1265, 1270 (11th Cir. 2000) (citations omitted). We review a district court's denial of a motion for a new trial for abuse of discretion. United States v. Hernandez, 433 F.3d 1328, 1332 (11th Cir. 2005), cert. denied, 126 S.Ct. 1635 (2006).

### III.  Speedy Trial Act

Under the Speedy Trial Act:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1). The Act also provides for the exclusion of time counted

7

toward the 70-day deadline under certain circumstances including delay resulting from the court's consideration of a proposed plea agreement. 18 U.S.C. § 3161(h)(1)(I). In addition, the Act provides for the exclusion of "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." Id. § 3161(h)(7). "[I]n a multi-defendant case, time excluded due to one defendant results in excludable days for his codefendants." United States v. Mejia, 82 F.3d 1032, 1035 (11th Cir. 1996).

In this case, resolution of the Speedy Trial Act claim turns on the effect of an order entered on October 5, 2005, by the magistrate judge finding that all of Doe's pretrial motions, including his motion to sever his case from his codefendant, were moot. Doe argues that this order effectively granted his motion to sever, and, therefore, his speedy trial clock continued to run during the time that his codefendant's plea agreement was under advisement. If Doe is correct, more than 100 non-excludable days elapsed before trial. If, however, the October 5, 2005 order was not an order of severance, a total of 60 non-excludable days elapsed before trial.[1]

In its order, the magistrate stated that it was advised by counsel that all

_____

[1] We do not address the issue of the exclusion of an additional seven days under § 3161(h)(1)(J) as it does not affect the outcome of this case.

8

pretrial motions were complied with or matters raised in those motions were resolved by agreement and, therefore, all pretrial motions were moot. Based on the magistrate's explanation of why Doe's motions were moot, the order cannot fairly be read to be effectively granting a severance.[2] Accordingly, the district court did not err in finding no violation of the Speedy Trial Act.

## IV. Prior convictions

Doe challenges the district court's admission of three cocaine possession convictions from August 1989 and December 1990 under Rule 404(b) of the Federal Rules of Evidence, arguing that the evidence should not have been admitted for the purposes of identity and intent, the evidence lacked probative value, and, in light of the evidence, the probative value was substantially outweighed by the danger of unfair prejudice.

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, [or] identity . . . ." Fed.R.Evid. 404(b). To be admissible:

---

[2]On September 8, 2005, codefendant Greger had a change of plea hearing. At the hearing a plea agreement with the government was presented. The district court took the matter under advisement and did not accept the guilty plea and agreement until December 7, 2005. This period is excludable.

9

> First, the evidence must be relevant to an issue other than the defendant's character; Second, the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; Third, the probative value of the evidence must not be substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403.

Matthews, 431 F.3d at 1310-11 (quoting United States v. Delgado, 56 F.3d 1357, 1365 (11th Cir. 1995)).  Whether the probative value is not substantially outweighed by undue prejudice is a "determination [that] lies within the discretion of the district court and calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness."  United States v. Perez, 443 F.3d 772, 780 (11th Cir. 2006) (citation and quotation marks omitted).

Because Doe's plea of not guilty made intent an issue, see id. at 779, and Doe's prior possession convictions were relevant to the issue of intent, see Matthews, 431 F.3d at 1311, the first prong of the test for admissibility is satisfied. Moreover Doe's defense strategy did not make intent irrelevant, as denial of participation is insufficient to remove the issue of intent in a conspiracy case. United States v. Kopituk, 690 F.2d 1289, 1334 (11th Cir. 1982).  However, the prior convictions were not properly admitted for the purposes of identity.  See United States v. Lail, 846 F.2d 1299, 1301 (11th Cir. 1988) (holding that, for

10

404(b) evidence offered to establish identity, "the likeness of the offenses is the crucial consideration. The physical similarity must be such that it marks the offenses as the handiwork of the accused. In other words, the evidence must demonstrate a modus operandi.") (citation omitted).

Even though the prior convictions were relevant to the issue of intent, we nevertheless hold that the admission of these convictions was an abuse of discretion due to the combined effect of their remoteness, their factual dissimilarity, and the lack of prosecutorial need for their introduction. While we do not follow a bright-line rule regarding the remoteness of a conviction, Matthews, 431 F.3d at 1311, the convictions at issue occurred approximately 14 and 15 years before the beginning of the charged conspiracy. While "circuit precedent regards virtually any prior drug offense as probative of the intent to engage in a drug conspiracy," thereby precluding an abuse of discretion based on the rejection of the argument that factual dissimilarity resulted in disproportionate prejudice, see id., the fact that the prior convictions were for simple possession of cocaine while the conspiracy involved a conspiracy to manufacture and distribute cocaine base lessens the probative value of the prior convictions. See United States v. Ramirez, 426 F.3d 1344, 1354 (11th Cir. 2005) ("A similarity between the other act and a charged offense will make the other offense highly probative with

11

regard to a defendant's intent in the charged offense.").

Most significantly, the government's need for these three convictions was not substantial. First, the government could have selected the three most recent prior convictions. In addition, the most recent conviction bore the most similarity to the conspiracy charge because, unlike the simple possession convictions, this conviction appears to be for the distribution of cocaine. Second, the government's other evidence of intent was strong. Unlike cases which rested on the testimony of co-conspirators or came down to a credibility choice between co-conspirators and the defendant and his witness, United States v. Calderon, 127 F.3d 1314, 1332 (11th Cir. 1997); United States v. McMahon, 592 F.2d 871, 875-76 (5th Cir. 1979), in this case, the jury had corroborative evidence in the form of Agent Munsey's testimony of Greger's prior consistent statements and the phone records showing consistent contact between Doe and Greger's telephone numbers, and the jury heard a tape of a conversation Greger placed to "Black" after his arrest. Doe's defense further lessened the need for this evidence because Doe's testimony gave the jury the opportunity to determine for itself whether Doe was the other participant in that conversation.

However, this error does not require reversal because we hold that it was harmless due to the overwhelming evidence of guilt in this case.

12

> We often have concluded that an error in admitting evidence of a prior conviction was harmless where there is overwhelming evidence of guilt. This Court further has instructed that erroneous admission of evidence does not warrant reversal if the error had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict. These harmless-error determinations are highly fact-intensive and will vary from case to case.

Harriston, 329 F.3d at 789 (citations and quotation marks omitted).

Greger testified that he provided Doe cocaine and Doe would cook crack cocaine for him. Greger also identified the voice on the phone as that of Black, who he identified as Doe, and explained that the recorded conversation concerned the sale of the cocaine base. Agent Munsey testified to Greger's prior consistent statement that Black, Doe's admitted nickname, cooked and supplied him with cocaine base. The recorded conversation as a whole, particularly the other speaker's responses to Greger that "I'll do that there" and, "But you know that will cost them more[,]" would allow a jury to find an agreement to manufacture and distribute cocaine base. Because Doe testified, the jury was able to make its own comparison of Doe's voice and the voice on the tape. Doe provided the jury further evidence because, by taking the stand and, inter alia, denying his involvement with cocaine and denying that he was the person on the tape, the jury could infer that the opposite of his testimony was true. United States v. Hasner, 340 F.3d 1261, 1272 (11th Cir. 2003). The same is true regarding Tigner's

13

testimony that it was not Doe's voice on the recording. In addition, the jury also had the phone records showing the extent of the contact between Doe's phone and Greger's phone.[3]

## V. Jury instruction

Doe argues that the record is devoid of any evidence that anyone aside from he and Greger were participants in the charged conspiracy. As a result, Doe contends that it was error for the district court to charge the jury that: (1) the government need not prove that all of the people named in the indictment were members of the scheme; or (2) two or more persons came to the requisite mutual agreement.[4]

> Generally, district courts "have broad discretion in formulating jury instructions provided that the charge as a whole accurately reflects the law and the facts," and we will not reverse a conviction on the basis of a jury charge unless "the issues of law were presented inaccurately, or the charge improperly guided the jury in such a substantial way as to violate due process."

Prather, 205 F.3d at 1270 (citation omitted).

Doe challenges the following portion of the conspiracy instruction, which

---

[3] For these reasons, we likewise reject Doe's claim that the evidence was not sufficient to sustain his convictions.

[4] We disagree with the government's contention that Doe invited an error by the district court, as the doctrine is not implicated due to Doe's objection to the instruction after it was given to the jury. See United States v. Gray, 626 F.2d 494, 501 (5th Cir. 1980).

was almost verbatim from the pattern jury instruction:[5]

> In order to establish a conspiracy offense, it is not necessary for the government to prove that all of the people named in the indictment were members of the scheme . . . . A defendant can be found guilty of the conspiracy offense only if all of the following facts are proved beyond a reasonable doubt[.] . . . First, two or more persons in some way or manner came to a mutual understanding to try to accomplish a common and unlawful plan as charged in the indictment.

The pattern jury instruction accurately reflects the elements of a conspiracy. United States v. Trujillo, 146 F.3d 838, 846 (11th Cir. 1998). However, where the indictment alleges that only two people were involved in the conspiracy and does not contain language to the effect that the conspiracy involved unnamed conspirators, the use of the challenged language may constitute a constructive amendment of the indictment. United States v. Keller, 916 F.2d 628, 634-36 (11th Cir. 1990); United States v. Andrews, 850 F.2d 1557, 1558-60 (11th Cir. 1988) (en banc). In such a case, it is incorrect for the court to instruct the jury that it need not find that all those named in the indictment were part of the conspiracy. See Keller, 916 F.2d at 636.

---

[5] The pattern instruction reads, in pertinent part,

In order to establish a conspiracy offense it is <u>not</u> necessary for the Government to prove that all of the people named in the indictment were members of the scheme . . . . What the evidence in the case <u>must</u> show beyond a reasonable doubt is: <u>First</u>: That two or more persons in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the indictment . . .

15

In this case, the indictment did not charge that the conspiracy was only between Greger and Doe, but also included other persons both known and unknown in the conspiracy. Thus, the instruction was not an incorrect statement of law generally or in relation to the conspiracy charged in this case. See Trujillo, 146 F.3d at 846; Keller, 916 F.2d at 636. Nor did the charge substantially mislead the jury so as to violate due process. In order for the jury to have convicted Doe of a conspiracy in accordance with its instructions to follow the court's instructions as a whole and to decide the case on the basis of the testimony and other evidence, which we presumed it followed, Ramirez, 426 F.3d at 1352, it must have found that Doe conspired with Greger. As these additional instructions provide further context for the instructions on the conspiracy charge, we discern no abuse of discretion in the court's phrasing of the conspiracy charge.

## VI. Motion for a new trial

Doe moved for a new trial under Rule 33 of the Federal Rules of Criminal Procedure, arguing that the government's improper impeachment of Tigner, and the court's comments in the presence of the jury concerning the purported felony conviction, destroyed Tigner's credibility and resulted in a miscarriage of justice. Doe provided a certified copy of the disposition in Tigner's case, showing that Tigner entered a plea of nolo contendere to the lesser included offense of

16

possession of a controlled substance and that adjudication of guilt was withheld. The district court found that the government wrongly impeached Tigner because she was not convicted under Florida law. However, it further found that Doe did not establish a miscarriage of justice, reasoning that the evidence in the government's case was substantial. On appeal, Doe asserts the importance of Tigner's credibility to his case, arguing that the government's improper impeachment and the district court's comments destroyed her credibility, which resulted in a miscarriage of justice.

A district court may vacate a judgment and grant a new trial if the interest of justice requires. Fed.R.Crim.P. 33. We cannot conclude that the district court's decision to evaluate Doe's new trial motion based on the strength of the other evidence against him or the conclusion it reached in doing so constituted an abuse of discretion. First, improper impeachment is subject to review for harmless error, taking into account the strength of the government's case. United States v. Rubin, 559 F.2d 975, 984-88 (5th Cir. 1977), vacated and remanded on other grounds, 439 U.S. 810 (1978).[6] Second, in evaluating prejudice stemming from judicial comments similar to the comments at issue in this case, among the factors

---

[6] Rubin was remanded for consideration of the government's position regarding the concurrent sentences doctrine. United States v. Rubin, 591 F.2d 278, 280 (5th Cir. 1979). On remand, the Court otherwise affirmed based on its reasoning in its prior opinion. Id. at 283.

17

considered was the strength of the evidence against the defendant. See Hellman v.

United States, 339 F.2d 36, 37-38 & n.2 (5th Cir. 1964). In addition, the factors

we consider in determining whether a judge's comments were not reversible error[7]

are not clearly weighted in favor of a finding of reversible error. Although the trial

was not lengthy, the court's three comments including, "All right. You will

investigate this matter, Mr. Konche, and take appropriate actions[,]" occupied a

short period of the trial. The final comment was directed to the prosecutor and not

the jury, and the jury was instructed to disregard the court's comments other than

its instructions on the law.

Nor was the court's evaluation of the evidence an abuse of discretion. As

discussed previously, the properly introduced evidence of Doe's guilt was

overwhelming. In addition, the court's finding that Doe and Tigner lacked

credibility regardless of the improper impeachment was not an impermissible

finding when evaluating a motion for a new trial in the interests of justice. See

Hernandez, 433 F.3d at 1335 (holding that, on motion for new trial based on the

weight of the evidence, the court could weigh evidence and consider the witnesses'

---

[7] We will not reverse a conviction based upon comments of a trial judge unless the comments are so prejudicial as to constitute denial of a fair trial. United States v. Morales, 868 F.2d 1562, 1576 (11th Cir. 1989). We have examined three factors weighing in favor of a determination that the judge's comments were not reversible error, namely "(1) the comments occupied but a few seconds of a lengthy trial; (2) the comments were directed to defense counsel rather than to the jury; and (3) the Trial Judge advised the jury to disregard any intimation by the Court relating to the facts of the case." Id. (citation and quotation marks omitted).

18

credibility).

In light of the foregoing, Doe's convictions are

**AFFIRMED.**