[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 15, 2007
THOMAS K. KAHN
CLERK

No. 07-12178
Non-Argument Calendar

_____

D. C. Docket No. 05-01162-CV-ORL-31-KRS

JANE GOFF,
on behalf of Marion Goff,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(November 15, 2007)**

Before TJOFLAT, BLACK and WILSON, Circuit Judges.

PER CURIAM:

Jane Goff ("Ms. Goff") appeals the district court's order affirming the Social Security Administration's ("SSA") denial of the application for disability insurance benefits of her deceased husband, Marion Goff ("Goff").

## I. BACKGROUND

On February 13, 2001, Goff filed an application for disability benefits under the Federal Old Age, Survivors and Disability Insurance Program (OASDI), 42 U.S.C. § 401 et seq. Goff's application was denied initially and on reconsideration. Goff died in October 2002, and Ms. Goff pursued Goff's application before the Adminstrative Law Judge ("ALJ").

Goff alleged that back pain, knee pain, shoulder pain, frequent headaches, insomnia, nightmares, nervousness, left foot pain, and anxiety prevented him from working since July 1, 1993. The ALJ determined that Goff was insured under the OASDI through March 31, 1998 and disability benefits were therefore available to Goff only if he could establish disability on or prior to that date. 42 U.S.C. § 423(a)(1)(A) (providing that eligibility for disability benefits is dependent on claimant being insured).

On December 27, 2004, the ALJ found that Goff was not disabled. The ALJ found that prior to March 31, 1998, Goff underwent arthroscopic surgery on his right knee and removal of a protruding bone from his left foot (a condylectomy on

2

the left fourth metatarsal) and suffered from degenerative joint disease of the knees, degenerative arthritis of the shoulders, left foot pain, back pain, and a history of seizure-like symptoms. While finding these impairments to be severe, the ALJ concluded that they did not meet or equal any of the impairments listed in the social security regulations. The ALJ assigned considerable weight to two of Goph's treating physicians, Dr. Papa and Dr. Donati, who both opined that Goff was able to perform sedentary work during the relevant time period. The ALJ also considered that Goff continued to work as private investigator until 2003 and that Ms. Goff's own testimony described Goff as a regular weightlifter who could lift 200 pounds during the relevant time period. (R. 14, 18.) In light of the record evidence as a whole, the ALJ determined that during the relevant time period Goff had the residual functional capacity ("RFC") to lift ten pounds occasionally, sit for six hours in an eight-hour workday and stand/walk for two hours in an eight-hour workday, perform substantially all of the full range of sedentary work, and that his ability to perform sedentary work was not compromised by any nonexertional limitations. (R. 21-22.) In reaching this conclusion, the ALJ determined that a March 31, 1999 assessment written by one of Goff's treating physicians, Dr. Greshman, did not relate back to the pre-March 31, 1998 time period.

On June 3, 2005, the Appeals Council issued a decision finding no basis to

3

review the ALJ's decision. On August 8, 2005, Ms. Goff sought review before the district court on various grounds. On December 21, 2006, Ms. Goff presented, for the first time, a half-page form, dated December 7, 2006, from Dr. Gresham that checked "yes" to seven separate questions. Dr. Gresham's "yes" answers indicate that Goff's condition before March 31, 1998, would have: (1) limited him from walking or standing for more than two hours a day or stooping; (2) prevented him from sitting for four to six hours a day; (3) caused difficulty in maintaining attention or concentration; (4) caused him to lie down periodically as needed throughout the day; and (5) kept him from performing sedentary work on a reliable and sustained basis 8 hours a day. (Doc. 21, Appx A.)

The district court held that substantial evidence supported the ALJ's findings and that remand was not appropriate on the basis of the new evidence because Dr. Gresham's recently submitted form did not create a reasonable possibility that it would change the decision reached by the ALJ.

## II. DISCUSSION

### A. ALJ's Finding that Dr. Gresham's Opinion Letter Did Not Relate to Pre-Insurance Time Period is Supported by Substantial Evidence

Ms. Goff first argues that the ALJ erred by not considering Dr. Gresham's March 31, 1999 opinion letter. We review de novo the legal principles that

4

underlie the Commissioner's decision in Social Security cases. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam). However, the Commissioner's final decision regarding disability is reviewed for substantial evidence. *Id.* The substantial evidence test requires that the administrative decision be based on "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

The ALJ must "state specifically the weight accorded to each item of evidence and why he reached that decision." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). This requirement ensures that the reviewing court can "determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.*

The ALJ must give the opinion of a treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440. Where the ALJ

5

articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *See Moore*, 405 F.3d at 1212.

The record indicates that the ALJ stated with sufficient specificity that he was according no weight to Dr. Gresham's opinion letter because he found it did not represent Goff's work status prior to his last insured date. Dr. Gresham's letter was dated March 31, 1999, exactly one year after Goff's last insured date, and provided in relevant part:

> [Goff] has a problem of severe debilitating pain in his right knee and left foot as well as his low back that has limited his functional capacity and required analgesic medication on a regular basis for the past few years. He has had gradual worsening of his symptoms that in my opinion has produced a level of physical incapacity that severely restricts his ability to work regularly in any type of physically stressful endeavor. He manages his own business by appropriately pacing the demands on his body while dealing with his problems of chronic pain.

(R. 287.)

While Dr. Gresham referenced Goff's medical problems over the "past few years," which would include time while insured, he also stated that Goff's symptoms worsened *gradually*. The letter is ambiguous as to whether the RFC assessment related to the pre-March 31, 1998 time period. It is also worth noting that the assessment only addressed an inability to perform "physically stressful

6

endeavor[s]"; it fails to address whether Goff could perform sedentary work, a question that Goff's other treating physicians answered in the affirmative.

Based on the letter's ambiguity and the substantial amount of other medical evidence regarding Goff's lack of a disability prior to March 31, 1998, substantial evidence supports the ALJ's finding that Dr. Gresham's opinion letter did not refer to the time period before Goff's last insured date, and that Goff was not disabled during the relevant time period.

## B. Goff Fails to Show a Reasonable Possibility that the New Evidence Would Change the Administrative Outcome

Second, Ms. Goff argues that the district court should have remanded this case back to the Commissioner due to the new evidence submitted, i.e., Dr. Gresham's December 2006 assessment.

We retain the authority to remand a case to the SSA for consideration of new evidence submitted to the district court pursuant to sentence six of 42 U.S.C. § 405(g). *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). We review "*de novo* the district court's determination whether remand to the Commissioner is necessary based on new evidence." *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218 (11th Cir. 2001). To be entitled to remand, the claimant "must establish that: (1) there is new, noncumulative evidence; (2) the evidence is

7

'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level." *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

We need not reach the first and third prongs because Ms. Goff fails to show a reasonable possibility that the new evidence would change the administrative result. After conducting a detailed five-step sequential analysis under 20 CFR § 404.1520, the ALJ concluded that Goff was not disabled prior to March 31, 1998. As detailed above, the ALJ assigned considerable weight to the opinions of Dr. Papa and Dr. Donati that Goff was able to do sedentary work during the relevant time period. These opinions were offered *during* the relevant time period as opposed to Dr. Gersham's recently submitted opinion that relates back approximately nine years. The ALJ's conclusion was not based solely on the opinions of Doctors Papa and Donati; rather, the ALJ found their opinions to be "consistent with the medical evidence as a whole during the period in question." (R. 19.) Also considered by the ALJ was the fact that Goff continued to work as a private investigator until 2003 and that, according to Ms. Goff's testimony, Goff was a regular weightlifter who could lift 200 pounds during the relevant time period. We also note that before the ALJ was Goff's own 2001 application for

8

disability benefits in which he stated that from 1993 to 1998 he performed private investigative work in which he would daily walk two to three hours, stand one hour, and sit for six hours. The work entailed "countless trips following the money," "countless hours of investigat[ing] and interviewing both hostile and friendly witnesses," and "hours of [conducting] surveillance." (R. 162.)

In light of the substantial weight of evidence in support of the ALJ's finding of no disability, the recently submitted form by Dr. Gresham cannot be held to provide a reasonable possibility of a new outcome.

Accordingly, we affirm.

**AFFIRMED.**